**Plaintiffs Exhibit 7**

```
1    these children have been removed from.  And now for several
2    months and she's done absolutely nothing to address those
3    issues.
4              So I'm asking the Court to find that she's waived her
5    right to a hearing.
6              If we go to a hearing, I'll address the underlying
7    reasons why we support that motion.
8              THE COURT:  Mr. Pickard?
9              MR. PICKARD:  Good morning, Your Honor.
10             We're -- we're here today on Father's motion to
11   transfer schools filed on August 2nd.
12             The underlying reasons for that motion are somewhat
13   unclear to me, to be honest.  I think based on the statute
14   cited in 19-1- -- I think it was 19-1-106, it didn't say that
15   she's not entitled to a hearing, it says that the hearing would
16   -- could proceed without her.
17             So I absolutely believe that Ms. ███████is entitled
18   to a hearing, so Ms. ██████is entitled to a hearing.
19             We had some --
20             THE COURT:  So can I ask you a question?
21             MR. PICKARD:  Sure.
22             THE COURT:  The only witness that would be testifying
23   would be Mr. ███████since your client chose not to appear.  So
24   why would this Court utilize its time when he's in favor of
25   this motion, and you don't have another witness?  Explain that
```

1   to me.

2            MR. PICKARD:  Much like the Defense, there is a

3   burden that the Court still must satisfy that its decision is

4   in the best interest of the child, and if the Court wants to

5   proceed without taking any evidentiary basis and make a

6   decision that the Court believes is in the best interest of the

7   child, I don't believe that that is proper.

8            So while --

9            THE COURT:  Have you read the case management order

10  that talks about hearings, and parties needing to be present,

11  and if they're not, it's a default?

12           MR. PICKARD:  I have, Your Honor, and I -- I -- you

13  know, I'm -- I'm not saying this isn't a difficult situation.

14  I'm saying that -- that there still is a standard that has to

15  be met, and I don't believe that the standard as set forth in

16  the motion has been that.  And there's also statements within

17  the reply brief, which I believe violate privilege, and those

18  are certain things we need to address.

19           And there's -- there's lots of issues here, and we

20  can -- we can certainly just summarily bowl (phonetic) it over,

21  but I -- I don't -- I'm not terribly long-winded usually.  I --

22  I've learned a little bit from my father, and I try to be a

23  little quicker.  And I'll -- I don't think it needs to be very

24  long, but I believe that a hearing needs to be had.

25           THE COURT:  Okay.

```
 1           MR. PICKARD:  Secondarily, we all had some, you know,
 2   pleasant conversations -- I think all the attorneys here get
 3   along fairly well -- standing here the first time that my or me
 4   or my office has heard any of these representations made to the
 5   Court.  And I assume -- and please correct the record if I'm
 6   wrong -- that the Court hasn't heard about this, nor has
 7   Mr. Bednarski.
 8           THE COURT:  Because it happened yesterday.
 9           MR. PICKARD:  Certainly, I -- I check my email 24/7,
10   I got four hours of sleep last night; we're -- we're constantly
11   working.  I'm certainly available to take emails or phone
12   calls.  I even provide my personal cell phone to anybody, in
13   this case, if that would assist.
14           I -- I know that you want us to work together, and I
15   do want to try to do that, Your Honor.
16           We're -- basically, we're ambushed today with this
17   information.  I don't -- I know it happened yesterday, but it
18   doesn't mean that an email couldn't be called (sic) or that a
19   representation would be made.  And now today, a motion is being
20   made essentially to suspend parenting time and have the Court
21   suspend parenting time, and there's no -- there's no due
22   process, there's no notice, and the -- and Miss -- while
23   Ms. ████ is not here for the hearing today, the hearing today
24   is scheduled on transfer of schools.  So -- so prior to about
25   13 minutes ago, I had no awareness that that is -- that this --
```

```
 1   that this -- this would even be raised, so...

 2             I'm available to -- to receive and talk, and I just

 3   -- I -- I need to be able to hear, and we need to be able to

 4   have notice of a hearing.

 5             THE COURT:  It wouldn't -- it's not now.  That's why

 6   I asked that specific question.  It's that if she doesn't tell

 7   the kids, this is -- so this is your notice -- this is my

 8   understanding.

 9             MR. PICKARD:  Okay.

10             THE COURT:  Because I understand that you just heard

11   it, I just heard it.  It happened yesterday.

12             MR. PICKARD:  What happened yesterday?

13             THE COURT:  The conversation with Mom about she

14   doesn't have cancer, and she needs to tell the kids, and she

15   has till next Wednesday to do so during her parenting time, or

16   they're going to request visits be suspended.

17             MR. PICKARD:  I understand the position was made.  I

18   mean, this -- this letter that is at issue is from August 2nd,

19   21 -- 20 days ago.  This has been filed with everybody; this

20   has been what Mother has been telling everyone for 20 years.

21   There's nothing that happened yesterday other than the

22   Department made a position.  There -- there wasn't some

23   statement that ███████ made yesterday that caused this.  This

24   -- nothing happened yesterday.

25             MS. BETTENBERG:  Can I just bring some clarification?
```

```
 1              THE COURT:  Hold on.  One at a time.
 2              But let me also clarify for you that the last time I
 3    saw Mom in court -- and she did not appear the time before --
 4    and I told Mr. Pickard, Sr., that that was not appropriate and
 5    not okay.  And so she has chosen not to be here today.  And the
 6    reason why I have parents appear unless they're out of state is
 7    if they're not following a treatment plan, I want to talk to
 8    them and see what's going on and how -- how is it that I can
 9    help them.  What are their barriers that I can do to help them;
10    right?  So she has not appeared today.  I warned her the last
11    time I saw her -- because we brought up parenting time issues
12    -- that if things -- because they actually have to have someone
13    sitting in the parenting time room because of the emotional
14    manipulation that she is doing -- that I would suspend
15    parenting time if that continues.  Your client has been warned.
16              So to -- to stand up here today -- and I don't think
17    you were the attorney there that day, I think it was
18    Mr. Pickard, Sr., but --
19              MR. PICKARD:  I read all the transcripts
20    (indiscernible) familiar, Your Honor, you can --
21              THE COURT:  Okay.
22              MR. PICKARD:  -- (indiscernible) is the same.
23              THE COURT:  I -- I apologize.  So I don't know what
24    you have and what you don't.
25              MR. PICKARD:  I appreciate it, but you're -- you're
```

1    correct; I understand.

2            THE COURT:  Okay.  So she has been warned.  She has

3    been -- you know, the Department could have said, We're

4    stopping now, period, but they didn't.  They're trying to help

5    her, and from my perspective, she's putting up barriers for her

6    own self, and to me, it seems like a mental health issue where

7    she's not getting the help that she needs.

8            Like, I don't know what's going on outside of here,

9    but she -- there's something going on that we're -- that the

10   Department is trying to give her some help, and she's not doing

11   it.

12           Like when this Court received a motion to continue

13   because she hasn't scheduled her psych eval yet, we had this

14   conversation months ago, it should have already happened.  This

15   Court should have already -- or you-all should have already had

16   the evaluation.  Like, something is going on with her mentally

17   that's causing her to not do anything, and for me to be able to

18   talk to her about that would be really beneficial for her.

19           And I'm sorry, I interrupted you.

20           MR. PICKARD:  No, Your Honor, I apologize for

21   interrupting you; that's certainly on me.

22           So I -- I would just like to address the issues in

23   order --

24           THE COURT:  Sure.

25           MR. PICKARD:  -- which is functionally -- I guess the

1   Court can decide whether they believe a hearing should be held

2   or not on the motion to transfer children.  I -- I have an

3   objection related -- if we're going to do it based on the

4   pleadings -- related to the reply, and certain statements that

5   I believe violate some confidentiality and are inaccurate.

6          And then I also think we should then address

7   separately -- and that's why we have hearings on these things.

8   And then if we want to address the issues that are presented

9   for the first time today, I would simply request a notice and

10  an opportunity to respond under all -- all due process.  Since

11  it was just raised today, I don't believe that a default should

12  be leveled against my client on that particular issue because

13  she was not aware that that would be an issue today.  I don't

14  think anybody's going to deny that they have not (sic)

15  contacted neither me nor my office regarding this.  Even had we

16  have been advised last night, it might be a different

17  situation, but it wasn't -- or in the hallway even.  I mean,

18  that -- that could have happened, and it didn't.

19         And so my -- my client has not defaulted on any

20  motion related to suspension of parenting time.

21         Thank you.

22         MS. BETTENBERG:  Judge, we're getting confused again.

23         THE COURT:  Uh-huh.

24         MS. BETTENBERG:  She's confessing the motion by her

25  failure to appear pursuant to the case management order.

1          THE COURT:  Yes.

2          MR. PICKARD:  Relating to the transfer of schools.

3          MS. BETTENBERG:  Yes.

4          MR. PICKARD:  That's your position?

5          MS. BETTENBERG:  And the -- with I think the update

6   related -- my perspective is, is that her complete -- I

7   referenced yesterday because this is a parent who has untreated

8   mental health issues, and her excuse for not being here today

9   is something that her letter from her own Counsel presented to

10  all of these other attorneys to say that she doesn't have

11  cancer is the reason that she should not be present is why I'm

12  saying the Court doesn't even have a viable reason for her

13  nonappearance.

14          The case management order is clear; if you fail to

15  appear, you confess the motion.  She's not entitled to an

16  evidentiary hearing.  The motion should be granted; she didn't

17  show up for the hearing that was scheduled with her Counsel,

18  with notice, due process; all of those things were met, she's

19  not here.

20          The issue related to parenting time is to put

21  everybody on notice.  This happened yesterday, and there has

22  been the opportunity -- and I think actually the order is

23  already that Ms. Yarbrough and Ms. Quinn can suspend visits if

24  there becomes concerns with that.

25          In the interest of being upfront and saying if we

1   continue to have this problem, and she's unwilling to tell her

2   children that she doesn't have cancer, that is going to be a

3   reason, and we're being ahead in forefront of this is a reason

4   that her visits may be suspended.  Nobody's asking to do that

5   today.

6           I would hope that her attorneys would have some

7   conversations with her about she maybe needs to sit down with

8   whoever she may be seeing from a mental health standpoint to

9   have how she's going to have that conversation, and she can do

10  it next week.  If then, her visits are suspended; there'll be a

11  notice, and if she comes in for a future hearing related to

12  that, then we'll address it.  That's not -- nobody's asking to

13  do that today, but we have to update the Court related to

14  progress of the children every time that we're here.  And --

15          THE COURT:  It's required.

16          MS. BETTENBERG:  -- and I think my -- my reason for

17  also including that is that it is -- speaks volumes to why this

18  purported excuse related to the letter that she provided, it --

19  it says the exact opposite.  And that's provided by -- by her

20  Counsel; that's not new news.  Nobody is bringing that in --

21  and he didn't know about it; he provided it.  And it's a letter

22  that says that she doesn't have cancer, and we're trying to

23  address that with the kids.  She doesn't get it.  And she chose

24  to schedule her evaluation long after our next hearing.

25          THE COURT:  Uh-huh.

1              MS. BETTENBERG:  Those are her choices, and she chose

2    to not be here today, Your Honor.

3              I think that motions confess.

4              MR. PICKARD:  May I, Your Honor?

5              THE COURT:  Uh-huh.

6              MR. PICKARD:  I don't think anybody here is a medical

7    profession- -- professional, nor consulted with a medical

8    professional as to what -- the type of lymphomatic (sic)

9    populous it is -- or whatever it is that's -- that's in place.

10             I think that a conversation with a doctor should be

11   had before we make that decision.  Had --

12             THE COURT:  You could have done that before today.

13   You've had this letter since August 2nd.

14             MR. PICKARD:  So has --

15             THE COURT:  And from when --

16             MR. PICKARD:  -- so has the Department --

17             THE COURT:  -- from me reading this letter, it -- it

18   just says she doesn't have cancer.  So I even have people that

19   are much sicker than her coming in here.  Like, I'm sorry.

20             MR. PICKARD:  I -- I certainly understand on -- again

21   on the two issues on the -- on the transfer of schools, like

22   Miss -- Ms. ███ needs to genuinely be responsible for her

23   actions related to the notice before this -- for this hearing.

24             I'm just talking about as we move forward, and the

25   decisions, and the -- and the -- the decisions about what is

1    her diagnosis, I just think it's fair for us to talk with a

2    doctor about what this means.  What that says is that when you

3    look at it under a microscope, it appears cancerous.  Cancerous

4    has to do with your body's cells eating into each other, which

5    happens actually in -- in most human bodies.  There is a

6    distinction then between whether there is a barrier and the

7    body is able to contain that or not.  And those are two

8    different kinds of cancer.  Whether they are malignant or not.

9             The analysis of this is -- is much more deeper than I

10   think anybody here is really able to handle, and if -- if --

11   and I think that's really for another time.

12            And so I'm -- I'm just asking that -- all I'm asking

13   is that we talk with a doctor, and if the girls are

14   concerned  --

15            THE COURT:  I'm not talking to a doctor; I don't have

16   a release.

17            MR. PICKARD:  A -- a doctor about this type of --

18   this diagnosis as to whether that's cancer or not.

19            THE COURT:  And why didn't you do that?

20            MR. PICKARD:  I was not aware of it until yesterday

21   that anybody believed that this was an issue,

22            THE COURT:  I saw the letter, I got it --

23            MR. PICKARD:  I read the letter.

24            THE COURT:  It says, "not cancerous," period.

25            MR. PICKARD:  And no, it does not, Your Honor.

```
 1                THE COURT:  Yes, it does.  I read it.
 2                MR. PICKARD:  I -- I respectfully disagree.
 3                MR. BEDNARSKI:  Your Honor, I'm going to echo
 4     Ms. Erickson, as well as Ms. Bettenberg.
 5                Your Honor, this letter talks about how she's
 6     experiencing recently mild flaring.  It doesn't indicate that
 7     she needs radiation treatment.  It doesn't indicate that she's
 8     in the midst of specific treatments.  In fact, the last time
 9     she saw this doctor was five months ago in March, which
10     indicates to me that this isn't that big of an issue.
11                She clearly indicates in the letter that there --
12     that the only person that correlates this to stressful events
13     is Ms. ██████   It specifically indicates that these are benign
14     skin lesions.  They look cancerous, but they are benign,
15     nonmalignant.  There -- and then the last sentence is, however,
16     "no clear evidence of" -- "lymphomatoid papulosis."  And
17     certainly, no findings to raise concern for transformation to
18     cutaneous lymphoma.
19                Your Honor, this letter was provided to us on August
20     14th.  It was written on August 12th; it wasn't provided to the
21     parties until August 14th when Mr. Pickard filed his motion to
22     continue that September 30th hearing.  It was provided as a
23     exhibit to that motion.
24                So that's the first time, so that was a week ago,
25     Your Honor.
```

1          In my opinion, I don't believe this rises to the

2    level of a reason to not be here.  And so pursuant to the

3    Court's case management order, I would ask the Court to deem

4    our motion to transfer schools as confessed, and, therefore,

5    Mr. ███████ can move forward with transferring schools for the

6    girls.

7          THE COURT:  Okay.

8          MR. BEDNARSKI:  If the Court deems that not, I'll

9    have more argument as it relates to the actual transfer.

10          THE COURT:  All right.

11          The Court has reviewed all of the motions, and even

12    in the motion, the initial motion, this Court finds that it has

13    met -- that Dad has met the burden that this is in the best

14    interest of the children to move to Douglas County School

15    District.

16          This Court has serious concerns of them remaining at

17    the old school given what happened with the old dance studio

18    that Mom kept being a part of.

19          Dad will have the decision making and educational

20    decision making in -- temporarily, in this.  Mom is not to go

21    the school; this is a Court order.  She may access like, are

22    they getting A's -- they probably have some sort of online

23    thing, like teachery's or Schoology or something to see how

24    they're doing.  But she may not communicate with the teachers,

25    period, until I know that she has started to turn a corner on

1   her mental health issues.  She may look; she may only look, but

2   she may not communicate with the teachers, the principal or

3   anything of that kind -- only Dad.  But she can have access to

4   whatever that program is --

5           MR. BEDNARSKI:  Yeah.  The --

6           THE COURT:  -- that they may have.

7           MR. BEDNARSKI:  -- online program.  Yeah.

8           THE COURT:  Yeah.  Okay.

9           Just so she can be apprised of, are they turning in

10  their homework; are they doing well in school -- and she should

11  have that information.  Okay?

12          This Court is significantly concerned with Respondent

13  Mother's mental health issues that if the Court were allow her

14  to have access to the teachers -- because this Court is so far

15  unaware that she has addressed her mental health issues -- that

16  she would not sabotage the new school or the new teachers or

17  something along those lines.  That's what this Court is

18  concerned about.

19          These kids deserve to have a shot where there's not a

20  sabotage.

21          So this Court is deeming this motion confessed; she

22  did not appear, and even by the motion itself, the Court is

23  finding that it's in the best interest of these children.

24          As for the parenting time, somebody has the -- I

25  don't have the transcripts, but I typically say it's at the

1   discretion of the Guardian ad Litem and Caseworker.  I mean,

2   that's something that I normally say.

3        (Whereupon discussion not related to this case was not

4   transcribed)

5             MR. BEDNARSKI:  And, Your Honor, the Court did rule

6   on July 8th that the Court gave discretion to the GAL and DHS

7   to terminate parental visits if they deemed that necessary

8   based off of the continued issues that were still going on with

9   the visits.

10            THE COURT:  Okay.

11            MR. BEDNARSKI:  Including having to put at that time

12   a specific DHS caseworker into the visit because of the issues.

13            THE COURT:  Okay.  I couldn't remember if I had done

14   that or not, and our file -- because of the appeal that went up

15   -- is a huge mess, and I don't have any of my MINCS at all.

16            So I apologize, so I couldn't remember.  I typically

17   do something like that, but sometimes I may forget.  I'm human.

18            So this has been put on notice then since July 8th.

19   Thanks for bringing that up to -- to me.  She has ample time to

20   rectify this issue.

21            If she does not comply with the Guardian ad Litem and

22   Caseworker's request, parenting time visits will be suspended.

23   There will be a notice; we'll have a hearing, but I'm going to

24   let all parties be aware that this Court will consider having

25   those visits suspended until we get the evaluation back so that

1    we all know how to proceed and how to help her.

2         This Court wants nothing more than to help her.  It

3    really, truly does.  It may seem opposite to her, and I don't

4    know what's going on with her brain, but she needs help.  I'm

5    sorry, she does.  She may not recognize that she needs help,

6    but she does.

7         So that's where we are at.  I hope that she's willing

8    to do that.  What might be helpful for her is, if she doesn't

9    know how to do that, and say that she does not have cancer to

10   her kids during parenting time, is talk to the caseworkers.

11   They're pretty good about all that; they know how to

12   communicate with kids in the most appropriate way.  They're

13   trained to do it every day to talk about hard things with

14   children.

15        So if she would like to reach out to them to do that,

16   she is more than welcome to.

17        MS. ERICKSON:  If the Court could make a ruling on

18   the motion to continue the September 30th hearing?

19        THE COURT:  Oh, I'd be happy to.

20        Denied.

21        MS. ERICKSON:  Thank you.

22        THE COURT:  We're six months in to this case, and

23   this Court typically has a lot more movement from parents that

24   are on treatment plans, and it's unfortunate that one parent

25   here has decided not to do that.  And at -- I believe this is

1    an EPP case, am I right?

2             MR. PICKARD:  Yes.

3             THE COURT:  I should have a lot more movement.  And

4    this Court has a history -- and you can ask anyone here -- that

5    if it doesn't have movement usually between the six month and

6    nine-month mark, we will set for an appropriate hearing, so we

7    meet the EPP guidelines if there's no good cause for not having

8    movement.  Right now, not seeing any good cause.

9             MS. ERICKSON:  Your Honor, if we could also get an

10   order that Mother is to physically appear on September 30th?

11            THE COURT:  She is to physically appear; it's an

12   order.  But I thought I ordered that from here on out the last

13   time because she had an uncle that she was waiting for a phone

14   call who wasn't feeling well, and I said that's not an excuse,

15   she could have waited for the phone call here if I remember

16   correctly.  So it's an excuse after an excuse.

17            MR. PICKARD:  For purposes of clarity,

18   (indiscernible) stipulate that there's an agreement that she

19   should be here at every hearing.

20            THE COURT:  No.  It's a Court order.

21            MR. PICKARD:  And it's a Court order.  I'll stipulate

22   to that Court order.  There's no confusion on that issue, Your

23   Honor.

24            THE COURT:  Okay.

25            Anything else?

1          MS. ERICKSON:  Not from the People.  Thank you.

2          THE COURT:  Anything else from anyone?

3          MR. BEDNARSKI:  Not from Respondent Father, Your

4     Honor.

5          MS. BETTENBERG:  No.  Thank you, Judge.

6          THE COURT:  All right.  I will see you September

7     30th.  All prior orders remain.

8          MS. ERICKSON:  Does the Court need a copy of this

9     order to (indiscernible)?

10         THE COURT:  You know, all I can say is that this file

11    is a mess.  So let me see.

12         MS. ERICKSON:  May I --

13         THE COURT:  Which one are you looking for, the

14    transfer?

15         MR. BEDNARSKI:  Yes, the transfer, Your Honor.

16         THE COURT:  I have that.

17         MS. ERICKSON:  If I can just get some copies then.

18       (Proceeding concluded at 9:55 a.m.)

19

20

21

22

23

24

25

1

## CERTIFICATE

2

3          I, Terri Mounts, certify that I transcribed this

4   record from the digital recording of the above-entitled matter,

5   which was heard on August 22, 2019, before THE HONORABLE

6   NATALIE CHASE, in Division 22 of the Arapahoe County District

7   Court.

8

9          I further certify that the aforementioned transcript

10  is a complete and accurate transcript of the proceedings based

11  upon the audio facilities of these CDs and my ability to

12  understand them.  Indiscernibles are due to microphones not

13  working properly, excessive noises or muffled voices.

14

15         Signed this 4th day of September, 2019, in Longmont,

16  Colorado.

17

18

19

20

21         _____

22         Terri Mounts
           Aapex Legal Services, LLC
23         10521 Booth Drive
           Longmont, CO 80504
24         Tel: 303-532-7856
           Fax: 303-539-5298

25