You are receiving this message because you submitted a Formal Complaint Form through the Provide Feedback page of the Office of the Child's Representative (OCR) website and requested a summary for this e-mail address. If you need to reach someone at the Office of the Child's Representative, call (303) 860-1517 or e-mail info@coloradochildrep.org.

Below, please find the summary you requested. Thank you.

| | |
|---|---|
| Your Form's Reference # | 17087325 |
| I want to provide the following feedback: | Complaint |
| I want to file a formal complaint against ... | an OCR Contract Attorney (Guardian ad Litem/Child's Legal Representative). |
| I have read and understand OCR's Formal Complaint Procedure shown above and I am ready to complete a Formal Complaint Form. | Agree |
| First Name | [redacted] |
| Last Name | [redacted] |
| Street Address | [redacted] |
| City | [redacted] |
| State | [redacted] |
| Zip Code | [redacted] |
| Daytime Phone Number | [redacted] |
| Email Address | [redacted] |
| Type of Case | Dependency and Neglect |
| Case Number | 19JV158 |
| County | Arapahoe |
| Name of Judge or Magistrate handling the case | Judge Chase |
| Name of Guardian ad Litem (GAL) or Child's Representative against whom your complaint is made: | Sarah Yarbrough |
| Please describe in detail the nature of your complaint against the Guardian ad Litem or Child's Representative named above. Include the times and dates of events where appropriate. | |
| By typing my name and entering the date below, I hereby certify that the information I entered on this form is true and accurate to the best of my knowledge. | [redacted] |
| Date | 12/30/2019 |
| Please send an automatic copy of my completed form to this e-mail address: | [redacted] |

To Whom It May Concern:
Sarah Yarbrough is the appointed Guardian Ad Litem for our three daughters, aged 12, 9, and 6.
Case number: 19JV158 Dependency and Neglect

[redacted]

My name is [redacted] mother of the three daughters mentioned above. I am filing this complaint on the basis of Ms. Yarbrough showing extreme bias and malpractice, causing harm to the detriment of the children she represents.

1. Ms. Yarbrough has actively worked with children's father to enable him to isolate and remove all contact with friends, family and activities that were an important part of all three daughters lives.
2. Ms. Yarbrough only offered mother one therapist in all of Denver that was acceptable to Ms. Yarbrough, despite earlier agreements the provider chosen would be mutually agreed upon.

3. Ms. Yarbrough retaliated against mother for information found in a complaint against a family therapist who violated confidentiality and lied.
4. Ms. Yarbrough intentionally and repeatedly slandered mother by making statements that mother is mentally ill in a public setting, in front of a jury at trial. Not one mental health professional including the court appointed evaluator has agreed with her. Four mental health professionals have concluded mother is not mentally ill.
5. Ms. Yarbrough intentionally lied about maternal grandmother hiding mother in trunk of car when ACDHS records prove this never happened. As a result of the lie, maternal grandmother has not been able to have unsupervised time with her grandchildren who she has a close and loving relationship.

The basis for this complaint is supported by court documents.

Mother's attorney objected to the appointment of Ms. Yarbrough based on extreme bias in a previous dependency and neglect case. Ms. Yarbrough said at the time that she could synthesize new information and would conduct a thorough investigation separate and apart from the old case.

Rule 7 of the C.R.M. requires that magistrates include in any order a written notice that the order or judgement was issued was issued in a proceeding where no consent was necessary, and any appeal must be taken within 21 days pursuant to Rule 7(a).(C.R.M. Rule 7). Such notice was not included in the order at issue, and therefore the order of appointment never became subject to review at the district court level. A petition would have been filed immediately after her appointment if such notice would have been given.

In the previous case, Ms. Yarbrough took a position adverse to mother. The jury did not find Ms. Yarbrough's position to be true. Ms. Yarbrough argued evidence from the previous case, in the new case. Her closing arguments blatantly showed bias when she argued events from her first appointment and intentionally and repeatedly called mother mentally ill with no evidence.

Timeline:

1. Ms. Yarbrough consistently has stated that mother is mentally ill and is slandering her reputation with no evidence. She continues to ignore the fact that 4 licensed mental health professionals have concluded mother is not mentally ill and is a fit parent.
2. [redacted]
3. [redacted]
4. [redacted]
5. On 8/2/19, mother's doctor wrote a letter to the court concerning mother's medical condition of Lymphomatoid Papulosis (LYP). Mother's physician stated in the letter submitted to the court, stress is often reported to trigger lesions and it would be prudent for mother not to be involved in any stressful situations regarding the court system. The letter states that it is appropriate for someone with [redacted] diagnosis to identify her LYP as a low grade cancer. The letter also states, The World Health Organization-European Organization of Research and treatment of Cancer classification grouped LYP among indolent cutaneous lymphomas. Classifying LYP as a cutaneous lymphoma is its association with other lymphoproliferative disorders, particularly the progression of LYP into frank lymphoma, that is, Hodgkin's disease, cutaneous T-cell lymphoma, or anaplastic large cell lymphoma.
Ms. Yarbrough threatened to cancel visits between mother and children if mother did not say she did not have cancer, "We are asking [redacted] to tell the girls that she does not have cancer and never did have cancer." Ms. Yarbrough does not have a medical degree, and ordered mother could only say statements in direct contrast to a Medical Doctor's letter. Visits were canceled, harming the children.
6. Once mother would lie about her disease, Ms. Yarbrough stated she would give mother back her visits. The moving target changed after mother complied to see her children and now Ms. Yarbrough said "At this time, I am not in agreement with increasing to two visits, starting phone calls or having a visit in your home. Visits were just reinstated after your actions caused them to be suspended. The overall delay caused by you in not completing the psych eval timely also delayed visitation commencing."
"I am sure the girls would like additional visits with you, however, we cannot continue the same pattern hoping for different results. I am happy to discuss increasing visits and phone calls, once the recommendations from the evaluations are received and you have fully engaged in any recommended treatment with providers who are approved by Marika and I."
7. Ms. Yarbrough has denied mother treatment with her therapist of two years after the court appointed mental health evaluator concluded mother's work with her therapist has been valuable and should continue.
8. Mother's attorney filed a motion with the court on 12/13/19 asking for more time for mother with children. Ms. Yarbrough would not allow additional time, with no valid reason other than "therapy" which mother has participated in since 2017. Ms. Yarbrough's response to mother's motion used information from a complaint mother filed against the family therapist for clear violations of the law to retaliate and present a negative outlook of mother to the court, denying mother and children time together for the holidays.

Ms. Yarbrough has actively worked to isolate all three children from everything that was familiar to them. Ms. Yarbrough removed all three children from dance, recommended the children be removed from the school they attended for 6 years and the children have been allowed no contact with many friends and family at their old school, dance studio, neighborhood as well as mother's large extended family. The children's best interest is ignored and they are being punished by Ms. Yarbrough's bias.

A thorough investigation of Ms. Yarbrough and her actions would benefit three beautiful children. All information in this complaint is factual, true and can be backed up by court documents.

Hi Cara,

I am going to send multiple emails with attachments for the concerns we spoke about. This way it will be easier for you to find the corresponding document that goes with each concern. I also will not be able to attach everything to one email. If documents are used in multiple concerns, I re-attached so you do not have to find it in another email.

The following are a list of witnesses:
1. ███
2. ███
3. ███
4. ███

Ms. Yarbrough representing the children's wishes to the court:
Looking at the transcripts, I found she did this on 9/30/19 and 6/10/19, we have ordered the 7/10/19 and 11/1/19 transcripts. I will update you when we receive them.
1. 11/1/19 I do not remember this happening at this hearing, but will confirm with the transcripts.
2. 9/30/19 page 21 line 15-18.
3. 8/22/19 no
4. 7/10/19 (I do not have the transcripts)
5. 6/10/19 page 14 line 18-23.
6. 5/31/19 no

I understand this is a lot of information, please feel free to contact me for clarification on anything I sent. There are a total of 8 emails.

Sincerely,

███

## LOW GRADE CANCER/VISITS CANCELED

The whole issue on why visits were suspended:

1. Ms. Yarbrough asked mother to tell children something that was not a fact.

2. Visits with the children were canceled for 10 weeks on 8/28/19 because Ms. Yarbrough said mother was emotionally harming her children by telling them she had cancer and was dying.

3. This directly resulted in damage to the children and to the case.

4. Ms. Yarbrough was not investigating or representing the facts and asked mother to lie about her health condition of 20 years.

5. In response to a question on doctor's first letter, mother supplied an updated doctor's letter and an email with medical journal evidence stating that mother's disease was appropriately identified as a low grade cancer.

6. Ms. Yarbrough ignored this information.

7. There was no need to go beyond the updated letter written by the doctor, but Ms. Yarbrough had an ex-parte phone call with the doctor and paraphrased the doctor to fit her narrative.

Please see attached documents:

1. Initial letter written by ▮▮▮▮ on 8/2/19

2. Updated letter written by ▮▮▮▮ on 8/27/19 and officially signed and dated on 9/4/19 adding clarification of mother's diagnosis of 20 years as a low grade cancer.

3. Transcript from the 9/30/19 hearing: Page 22 line 21-25, line pages 23, 24, 25, 26 and 27 line 1-6.

4. Letter from Jay Pickard regarding visits being canceled. 2019_08_30_14_30. Ms. Yarbrough did not respond to the letter.

5. Motion to reinstate visits dated 9/16/19.

6. ROC records from ACDHS 5/30/19-10/29/19: Please note on page 58 the court ordered the GAL and caseworker could cancel visits at their discretion. Page 149 of the records is an email where Ms. Yarbrough paraphrases a phone call with my doctor. Please note the following pages in the records have information regarding this topic. 95, 100, 103, 107-117.

7. Additional ROC records were ordered from ACDHS to include emails etc. from 10/29/19 until present. They will be forwarded when received.

## DANCE

All three daughters were removed from their annual dance recital 2 days before the event and not allowed to return to the dance studio again.

1. The first reason used to remove the children from the dance recital was that the father did not pay his portion of the dance bill, so the children would not be able to dance in the recital.

2. Mother sent an email to the dance studio to clarify payments.

3. After it was clarified that the dance studio would not worry about payment until after the recital, the children were told by father and supported by Ms. Yarbrough and caseworker that they were not able to participate due to the bill not being paid.

4. Mother was not informed by Ms. Yarbrough, caseworker or father of the change in their plans to not allow the children to dance in their recital after studio clarified it would worry about finances after the recital. Mother learned about this at a parenting visit from the upset children.

5. Someone from the dance studio made a referral to ACDHS Department on 6/6/19 and after the referral was received, Ms. Yarbrough along with the caseworker said the dance studio was not safe because within the referral it said mother had contact with the children. No follow up was made or investigation into the issue and the decision was made by Ms. Yarbrough and the caseworker not to allow the children to dance in the annual dance recital.

Please see attached 5/30-10/29 ROC records page 3, 5, 6,11, 12, Transcripts 6/10/19 page 11 line 15-24 and attached assessment from the department records.

## SCHOOL

1. The children were set to start at ▇▇▇ on 8/19/19, our family has attended this school since 2014.

2. On 7/29/19 the caseworker reported in the ROC notes that father wanted to change schools. ROC records from ACDHS 5/30/19-10/29/19 page 73

3. A letter was sent by Pickard law to father's council on 8/1/19. See attached.

4. Father's attorney responded:
*Pursuant to the Motion to Change Temporary Custody, changing schools could only occur with a Court Order (also vaccinations and dance). While the school was not specifically included in the written Court Order Transferring Temporary Custody, we believe it is still covered by the motion and therefore believe we need to speak with you before filing a motion. We are going to file a Motion to Change Schools for the girls.* ▇▇▇ *would like to enroll them in* ▇▇▇ ▇▇▇ *believes this is appropriate for a number of reasons: first, is the influence* ▇▇▇ *has at the school. It is much more significant than her influence and contacts at the dance studio. She volunteered at the school 4 days a week and has numerous parents she is friends with at the school and we believe something will happen exactly like it did in the dance studio. Therefore we want to be proactive with the*

transfer. Second and most important is the cost of the school. Please let me know your position as soon as possible so I can properly state your position in our Motion. Both DHS and the GAL have no objection to ▮▮▮ request to transfer schools.
Thanks, Rick

5. Ms. Yarbrough did not contact mother or her attorney about her position to support changing schools.

6. The children have been isolated from friends and families at the school they attended for 6 years.

Motion's attached for change in schools for your reference.

## MOTHER IN TRUNK

On 9/26/19 a letter was sent to the County Attorney asking her to correct the court record. The records at the department reflect that this never happened.

1. The County attorney and GAL told the court at the beginning of the case that maternal grandmother was not an appropriate supervisor because she hid mother in the trunk of the car.

2. Mother and Maternal grandmother denied this event happened and when the ACDHS records reflected that this did not happen the GAL and caseworker continue to use this to prevent Grandmother from having unsupervised time with her grandchildren or being a supervisor for parenting time.

3. A proper investigation of the facts and truth was not done by Ms. Yarbrough and the children have been isolated from Maternal grandmother and family as a result.

4. Maternal grandmother had a thorough background check with the department during the first case (she took care of the children for 7 weeks). She has a loving relationship with her grandchildren, the relationship has been disrupted.

## RETALIATION

1. Mother filed a motion with the court for more visitation with her children after numerous attempts via email were unanswered and no reason was given by Ms. Yarbrough.

2. Ms. Yarbrough filed a joint response with the County Attorney using information mother made in a complaint against a family therapist to present mother in an unfavorable light to the court.

Please see attached motion mother filed and response joint response and reply.