## Declaration of Danielle J. Duperret, ND/PhD

**The following declaration is written in plain layman's English.**

**No word is to be understood as legal jargon.**

<u>Tuesday, August 25, 2020 - Arapahoe District Court Case # 19JV158</u>

On August 25, 2020, around 8:30 am, I came to the Arapahoe District Court in Centennial to meet a group of people to lend moral support to a mother who was on trial.

As we quietly entered the courtroom, we were told that this was a closed hearing, and we had to leave.

Ms. Maralee McLean, a certified CASA advocate, stayed with ▇▇▇▇▇▇ her client, but was soon told to leave the courtroom as well.

Since I had been trained and certified as an ADAAA advocate, I was asked by the group to step in, to see if the judge would allow me to stay.

As I introduced myself, the judge said that she did not believe I was an ADAAA advocate, and I had to leave.

I made my way to the office of the ADA coordinator of the court, to ask why no advocate was allowed to support a woman who had requested ADA accommodations. Ms. Charla Branham was nowhere to be found. I was told to immediately return to Courtroom 22, which I did.

Apparently, the judge had a change of heart and allowed me in the courtroom. I had to take the stand and answer questions from 3 different attorneys, as to my qualifications and group associations. I was told by the judge that if I were to repeat what went on in the courtroom, I would face jail and/or fines, which seemed very threatening.

I told the judge that I had just met ▇▇▇▇▇▇ the day before, was not familiar with the case, and needed time to prepare proper ADAAA accommodations (which include a structured interview, contacting her medical and therapeutic personnel, do a functional assessment, a review of pertinent history and pertinent collateral contacts), and prepare my client for a trial. I was informed that no continuance was going to be granted.

An ADAAA advocate's job is to monitor the state of her client, thus the advocate needs to be close enough to check on her facial expressions, and general demeanor, stress and nervousness. I was not allowed to stay close to ▇▇▇▇▇▇, and was sent to the general seating area of the courtroom.

In cases of high conflict and/or allegations of domestic violence, proper ADAAA accommodations require that the parties be in separate rooms. Instead, ▇▇▇▇▇▇ (the ex-husband) was seated directly behind ▇▇▇▇▇▇. I was seated 3 benches up, behind ▇▇▇▇▇▇. I could see part of ▇▇▇▇▇▇ back. An officer was seated behind me. ▇▇▇▇▇▇ two attorneys were seated behind ▇▇▇▇▇▇.

If ▇▇▇▇▇▇ needed my assistance, and turned around, she would immediately meet face to face with her ex-husband.

1

I was thus unable to offer support to my client, who had been diagnosed with PTSD, and was put in an extremely stressful situation.

███████ had a panic/anxiety attack; the judge ordered her to stop it, then allowed her a 5-min. break.

███████ and I exited the courtroom; she was shaking violently. We went down the hallway, where ███ sat on the ground. We practiced some breathing exercises, but the time allotted was not nearly enough to calm my client down. The judge had warned her that whether she returned in time or not, the trial would continue. My client went back into the courtroom, her teeth still chattering, and her body shaking uncontrollably.

The judge told her again to stop, several times. My client could not comply, as panic/anxiety attacks are NOT controllable.

The rest of the court trial was extremely shocking. In my opinion, it had nothing to do with an American Court of Law, but was reminiscent of movie scenes I had seen about the Inquisition. Anytime ███████ tried to explain her side, she was interrupted by one of the three attorneys. Anything that she said was considered irrelevant.

███████ was alone, with PTSD, surrounded by 6 opposing actors and a judge who was quite rude to her.

I am NOT disclosing anything that could not be seen through the door window from the outside of the court room.

The judge, and the court reporter, asked one of the attorneys and the GAL to slow their speech down, as they were speaking extremely fast. Proper ADAAA accommodations for a person suffering from PTSD is for rapid speech to be slowed. The Court's patience is needed to allow her to mentally process the information.

███████ should have been given breaks in the presentation allowing her to take notes and process the information. She should not have been forced to make instantaneous decisions.

She needed breaks in the proceedings when she became symptomatic, without missing any of the proceedings.

She should have been allowed to digitally record all proceedings for her private use only, to offset memory deficit when under stress.

Legal proceedings should have been limited to no more than 4 hours.

When I inquired as to why proper accommodations had not been set in place, I was told that she had not been given the time to do so. She was informed at the last minute that the courtroom would be sealed. She had not been able to find a new attorney after hers dropped from her case. As a reminder, this is happening during COVID time, making it quite challenging to find counsel.

The trial started at 9:00 am, and ended around 5:45 pm. It was continued to the next morning at 8:15am. My client was warned that whether she showed up or not, the trial would continue.

I was told I would be allowed back the next day.

<u>Wednesday, August 25, 2020 - Arapahoe District Court Case # 19JV158</u>

Before leaving my home to attend the trial, I received a phone call that ▮▮▮▮▮ was in the hospital.

8:15 am: I entered the courtroom, and as the proceedings started, I raised my hand to inform the court that I had just been made aware that ▮▮▮▮▮ was in the hospital. I also mentioned that I felt it was my duty to file a complaint with the DOJ as to the lack of accommodations provided to ▮▮▮▮▮ I also requested the minutes, so that ▮▮▮▮▮ could prepare an appeal.

I was told to leave the courtroom. Since my client was not there, my support was not needed any longer. I inquired as to whether the trial would continue or be continued. The judge told me she had not made her decision yet.

I made my way to the hospital where I was told ▮▮▮▮▮ had spent the night. I was able to speak with the hospital's evaluator, who told me that ▮▮▮▮▮ would be released. She was under extreme stress, and needed rest and support.

I waited for ▮▮▮▮▮ release, and we then walked out of the hospital.

▮▮▮▮▮ in no way indicated that she intended to flee. She needed to attend to her health issues.

▮▮▮▮▮ went home to rest, and I went home myself.

Written this 27th day of August, 2020

Danielle J. Duperret, ND/PhD

Psycho-legal trauma specialist and certified ADAAA Advocate