| | DATE FILED: May 26, 2021 4:11 PM |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>7325 S. Potomac<br>Centennial, CO 80112 | |
| PEOPLE OF THE STATE OF COLORADO,<br>In the Interest of:<br><br>██████████<br><br>and concerning<br><br>██████████<br><br>Respondents. | ▲ COURT USE ONLY ▲ |
| Richard Bednarski<br>Sherman & Howard L.L.C.<br>90 S. Cascade Ave. Suite 1500<br>Colorado Springs, CO  80903<br>Phone Number:  719/448-4084<br>FAX Number:    719/635-4576<br>E-mail: rbednarski@shermanhoward.com<br>Atty. Reg. #:  31157<br><br>Sarah Yarbrough, Reg. No. #45710<br>Alison A. Bettenberg Reg. No. #33912<br>Guardian *ad Litem*<br>Bettenberg, Maguire & Associates, L.L.C.<br>7009 S. Potomac Street, Suite 220<br>Centennial, Co 80112<br>(303) 952-4949 - Phone<br>(303) 496-0531 – Fax<br>syarbrough@bmalawco.com – Email<br><br>Kristi Erickson, Reg. #50739<br>Assistant County Attorney<br>Attorney for Petitioner<br>14980 East Alameda Drive<br>Aurora, CO 80012<br>(303) 752-8989<br>Fax: (303) 636-1889 | Case Number:<br>19JV158<br><br><br>Div: 22<br>Ctrm: |
| **JOINT FORTHWITH MOTION FOR SHOW CAUSE HEARING** | |

RESPONDENT FATHER, through counsel, Richard F. Bednarski, Arapahoe County Department of Human Services, through County Attorney Kristi Erickson, and the Guardian ad Litem Alison Bettenberg request this Court issue an Order for Suzanne Taheri-Staiert to appear and show cause to explain how Chris Osher, a reporter for the Gazette newspaper, obtained a copy of ███████ Motion for Relief from Judgment Pursuant to C.R.C.P. 60. As grounds, ████ ACDHS and GAL state the following:

1. This case is Title 19 case. Because of the provisions of Title 19, attorneys are not allowed to upload filings to the Colorado Courts E-filing system. Instead, attorneys file the pleadings directly to the Court Clerk which are also emailed to opposing counsel.

2. This Court, by Judge Chase, sealed this case on August 26, 2020, 19JV158, preventing all parties and counsel from being able to download or obtain the filings in this case unless requested directly from the Court clerk. The Court also specifically prohibited all parties and counsel from providing copies of the filings in this case. (Order attached as Exhibit 1)

3. On May 9 2021, Suzanne Taheri-Staiert filed a Motion for Relief from Judgment Pursuant to C.R.C.P. 60 on behalf of ████████

4. On May 18, 2021, the Colorado Springs Gazette published an article quoting extensively and directly from Ms. Taheri-Staiert's filing. The Gazette specifically stated Ms. Taheri sought a court order to seal the filing [of the Rule 60 motion] from public view but "the Gazette obtained a copy because no sealing order has been issued" and also stated that the

53315753.1

filing has been referred to a senior judge in Arapahoe County for consideration. (Article attached as Exhibit 2)

5.     However, the Gazette's claim that no sealing order has been issued regarding the filing is false.

6.     The Gazette article cites numerous arguments in Ms. Taheri's motion, including the allegations that the contempt jailings are in violation of the U.S. Constitution's First Amendment, which grants a right to free speech, and the Eighth Amendment. Additionally, the Gazette article states that the motion alleges that Judge Chase "also violated          14th Amendment right to due process due to bias."

7.     Ironically, the article then states that "Taheri said she could not discuss the case due to the gag order from the judge."

8.     Upon information and belief, the only way the Gazette could have obtained Ms. Taheri's motion is directly from Ms. Taheri, or by Ms. Taheri disseminating the document to her client,          or a third party, who subsequently provided it to the Gazette.

9.     As such, Mr.          now seeks an Order from this Court requiring Ms. Taheri to appear in court and explain to the Court how Ms. Taheri's Rule 60 motion on behalf of          was obtained and cited by the Gazette.

10.    Additionally, Ms. Taheri has entered her appearance on behalf of          and therefore, Ms. Taheri should also be required to appear in Court and explain whether or not Ms. Taheri's violation of the Court's Orders was at          behest, or if it was done without          knowledge and consent.

3

53315753.1

WHEREFORE, Mr. ▮▮▮▮ requests this Court set a forthwith hearing requiring Ms. Taheri

to appear at a show cause hearing and explain how the Gazette obtained a copy of the Rule 60

motion.

Respectfully submitted this 26th day of May, 2021.

_s/ Richard F. Bednarski_
Richard F. Bednarski, #31157
LAWYERS FOR DEFENDANT

_s/ Sarah Yarbrough_
Sarah Yarbrough, #45710
Alison A. Bettenberg, #33912
Guardians *ad litem*

_s/ Kristi Erickson_
Kristi Erickson, #50739
Assistant County Attorney

## CERTIFICATE OF SERVICE

Served via email to all counsel.

_s/ Devon O. Ryan_

| | DATE FILED: May 26, 2021 4:03 PM |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>7325 S. Potomac<br>Centennial, CO 80112 | |
| PEOPLE OF THE STATE OF COLORADO,<br>In the Interest of:<br><br>██████████<br><br>and concerning<br><br>██████████<br><br>Respondents. | ▲ COURT USE ONLY ▲ |
| Richard Bednarski<br>Sherman & Howard L.L.C.<br>90 S. Cascade Ave. Suite 1500<br>Colorado Springs, CO 80903<br>Phone Number: 719/448-4084<br>FAX Number: 719/635-4576<br>E-mail: rbednarski@shermanhoward.com<br>Atty. Reg. #: 31157<br><br>Sarah Yarbrough, Reg. No. #45710<br>Alison A. Bettenberg Reg. No. #33912<br>Guardian *ad Litem*<br>Bettenberg, Maguire & Associates, L.L.C.<br>7009 S. Potomac Street, Suite 220<br>Centennial, Co 80112<br>(303) 952-4949 - Phone<br>(303) 496-0531 – Fax<br>syarbrough@bmalawco.com – Email<br><br>Kristi Erickson, Reg. #50739<br>Assistant County Attorney<br>Attorney for Petitioner<br>14980 East Alameda Drive<br>Aurora, CO 80012<br>(303) 752-8989<br>Fax: (303) 636-1889 | Case Number:<br>19JV158<br><br><br>Div: 22<br>Ctrm: |
| **JOINT FORTHWITH MOTION FOR SHOW CAUSE HEARING** | |

RESPONDENT FATHER, through counsel, Richard F. Bednarski, Arapahoe County Department of Human Services, through County Attorney Kristi Erickson, and the Guardian ad Litem Sarah Yarbrough, request this Court issue an Order for Milo Schwab to appear and show cause and explain how the Denver Post and Colorado Springs Gazette obtained copies of the Notice of Appeal and transcripts. As grounds,                ACDHS, and the Guardian ad Litem state the following:

1.      This Court ordered on August 26, 2020, that all parties and counsel were not allowed to share or post any information about the case, including what happened in court and all filings with the Court. The Court's Order reads: "No Party is to release any filing or minc on the case to any third party. No party is to ask other people to upload or post anything on the internet regarding this case. These orders shall stand through the remainder of the case."

2.      This Court applied its August 26th Order to counsel as well as the parties in the case. Moreover, the Court sealed the case which prevented all parties and counsel from accessing the filings in the case and transcripts in the case without prior court approval.

3.      Furthermore, this Court issued specific orders to counsel on October 7, 2020 and again on March 12, 2021. That Court's Order reads: "Parties are strictly prohibited from sharing the transcripts with any third person. Parties are strictly prohibited from giving copies of the transcripts to their clients. Clients are only allowed to view the transcripts. Clients and attorneys are prohibited from copying the transcripts, taking photos of the transcripts or using the transcripts for any purpose other than litigation. Parties and clients are prohibited from

2

posting any transcript on any social media venue or organization. Parties and clients are prohibited from sharing this order to any third party. Failure to comply with this rule shall result in contempt of court."

4.      Mr. Schwab was in Court on March 12, 2021 when the Court re-issued the above order upon Mr. Schwab's request for the transcripts of the hearings on March 5th and 12th. Mr. Schwab was advised by the Court of this order and Mr. Schwab agreed to comply with the Court's Order.

5.      Additionally, this case is a Title 19 juvenile case. Under title 19, the general assembly recognized that certain information obtained the course of implementation of the provisions of Title 19 is highly sensitive and has an impact on the privacy of children and members of their family. C.R.S. § 19-1-302(1)(a). The general assembly also stated that disclosure of sensitive information carries the risk of stigmatizing children. *Id*. As such, these cases are suppressed from public viewing, including media.

6.      On April 22, 2021, attorney Milo Schwab filed a Notice of Appeal. Along with the Notice, Mr. Schwab filed transcripts of hearings from this case, 19JV158, attached as Exhibits to the Notice of Appeal, specifically transcripts from September 23, 2020, March 5, 2021 and March 12, 2021.

7.      Mr. Schwab attached those transcripts with full knowledge that this Court ordered that no transcripts, motions, orders, or any other court records are to be published or publicly disseminated. This Court's order preventing publication applied to the parties and the attorneys alike. (This Court's Order is attached as Exhibit 1).

3

53346333.1

8.      Mr. Schwab filed the Notice of Appeal in 19JV158, a D&N case. Upon information and belief, Mr. Schwab's filing of the Notice of Appeal led the Court of Appeals to suppress the appellate case as is always done in Dependency and Neglect cases. However, the Court of Appeals did not issue any orders on the appeal's case until April 26, 2021.

9.      Thus, if the appellate case was not suppressed immediately, the news media would have needed to be alerted shortly after the Notice of Appeal was filed on April 22, 2021 and before it was suppressed on April 26, 2021. Therefore, the news media would have had to have known about the appeal and obtained the Notice of Appeal and transcripts within the 4 days it was unsuppressed.

10.     Upon information and belief, Mr. Schwab is aware that transcripts are not required to be attached to a Notice of Appeal under C.A.R. 3.4 or C.A.R. 4. A Notice of Appeal is a jurisdictional document, required to preserve an individual's appellate rights. It is not reviewed or utilized as the record on appeal. The notice is only reviewed for timeliness.

12.     Instead, appellate counsel is required to prepare a designation of record on appeal. That designation of record is provided to the lower court, who refers the matter to the Clerk of the Court. Subsequently, the Clerk of the Court prepares the appropriate pleadings and exhibits, and the Court Reporter prepares the official transcripts on appeal. Once complete, the Court Reporter certifies the transcripts and the Clerk of the Court certifies the record on appeal, including the transcripts and provides the certified record to the appellate clerk.

4

53346333.1

13.     Despite the proper procedure, Mr. Schwab published the transcripts of hearings regarding this case in such a manner which may have allowed various news agencies to access the record through the Court of Appeals if the case was not immediately suppressed.

14.     However, if the appellate case was suppressed at the time of the initial filing of the Notice of Appeal, which is usually the case in appellate filings on D&N cases, then the news media would have not been able to access the Notice of Appeal or the transcripts. The only way the news media would have been able to obtain a copy of the Notice of Appeal and transcripts would have been from Mr. Schwab as he was the only one who had the transcripts from those dates in his possession.

15.     As a result of Mr. Schwab's actions, both the Denver Post and the Colorado Springs Gazette obtained a copy of the Notice of Appeal and transcripts. Based on those documents, an article was published in the Denver Post on May 4, 2021 (Exhibit 2) and another article in Colorado Springs Gazette on May 18, 2021 (Exhibit 3).

16.     This Denver Post article, like all other articles posted regarding this case, is simply misleading and false. It includes direct quotes from the transcripts of sealed hearings or sealed orders or other pleadings such as: that 'Judge Chase prohibited            from "discussing the allegations of abuse or neglect which were investigated during the case or providing case related information" to anyone not involved in the case' and 'In March, Chase found that      had violated the protective order by "talking about motions to withdraw," "talking about attorneys in this case" and "talking about the unfairness of this case," and sentenced her to six more months in jail according to the notice of appeal."

5

531346333.1

17. The Gazette article on May 18, 2021 also quotes from the transcript of the September 23 hearing: "She is not to communicate, and I don't know how many times I have to say this – to communicate with third parties about this case. I expect another contempt coming down."

18. Mr. ▓▓▓ ACDHS, and the Guardians ad Litem request this Court order Mr. Schwab to appear and show cause as to why he publicly published the transcripts of court hearings either through the Notice of Appeal or directly to the news media in possible violation of the Court's Order and the provisions of Title 19.

WHEREFORE, ▓▓▓▓▓ ACDHS, and the Guardians ad Litem request this Court set a forthwith hearing requiring Mr. Schwab to appear and show cause and explain his public dissemination of hearing transcripts in violation of multiple court orders.

Respectfully submitted this 25th day of May, 2021.

_s/ Richard F. Bednarski_
Richard F. Bednarski, #31157
LAWYERS FOR RESPONDENT FATHER

_s/ Sarah Yarbrough_
Sarah Yarbrough, #45710
Alison A. Bettenberg, #33912
Guardian *ad Litem*

_s/ Kristi Erickson_
Kristi Erickson, #50739
Assistant County Attorney

## CERTIFICATE OF SERVICE

Served via email to all counsel.

_____s/ Devon O. Ryan_____

**7**

DATE FILED: May 26, 2021 4:14 PM

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>7325 S. Potomac<br>Centennial, CO 80112 | |
| PEOPLE OF THE STATE OF COLORADO,<br>In the Interest of:<br><br>K.P., L.P., AND M.P.,<br>Children,<br><br>and concerning<br><br><br><br>Respondents. | ▲ COURT USE ONLY ▲ |
| | Case Number:<br>19JV158<br><br><br>Div: 22<br>Ctrm: |
| **ORDER RE: JOINT FORTHWITH MOTION FOR SHOW CAUSE HEARING** | |

THE COURT, having reviewed the Joint Forthwith Motion for Show Cause Hearing,

hereby sets this matter for a show cause hearing on the ___ day of _____, 2021 at

_____.

ORDERED this ____ day of May, 2021.

BY THE COURT:

_____
DISTRICT COURT JUDGE

| | DATE FILED: May 26, 2021 4:07 PM |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO | |
| 7325 S. Potomac | |
| Centennial, CO 80112 | |
| PEOPLE OF THE STATE OF COLORADO, | |
| In the Interest of: | |
| | |
| K.P., L.P., AND M.P., | |
| Children, | |
| | |
| and concerning | |
| | |
| ▆▆▆▆▆▆▆▆▆▆▆▆ | |
| Respondents. | ▲ COURT USE ONLY ▲ |
| | Case Number: |
| | 19JV158 |
| | |
| | |
| | Div: 22 |
| | Ctrm: |
| **ORDER RE: JOINT FORTHWITH MOTION FOR SHOW CAUSE HEARING** | |

THE COURT, having reviewed the Joint Forthwith Motion for Show Cause Hearing,

hereby sets this matter for a show cause hearing on the ___ day of _____, 2021 at

_____.

ORDERED this ____ day of May, 2021.

BY THE COURT:

_____

DISTRICT COURT JUDGE

Exhibit A

DISTRICT COURT, COUNTY OF ARAPAHOE
STATE OF COLORADO

Court Address:
Arapahoe County Justice Center
7325 South Potomac Street
Centennial, Colorado 80112

DATE FILED: May 28, 2021 2:34 PM

^ COURT USE ONLY ^

PEOPLE OF THE STATE OF COLORADO
Petitioner,

In the Interest of:

█████████, █████████,
 and █████████,
Minor Children,

and Concerning:

█████████ aka █████████
aka █████████ and █████████,
Respondent Parents.

Case No. 18JV158

Division 22

REPORTER'S TRANSCRIPT

A P P E A R A N C E S

FOR THE PETITIONER:    Kristi Erickson, Esq.
                       Reg. No. 50739

CASEWORKER:            Marika Quinn

GAURDIAN AD LITEM:     Sarah Yarbrough, Esq.
                       Reg. No. 45710

FOR THE RESPONDENT
FATHER:                Richard Bednarski, Esq.
                       Reg. No. 31157

     This matter came on for hearing and commenced on

Wednesday, August 26, 2020, before the HONORABLE NATALIE

CHASE, Judge of the District Court.

1   of the children.  Due process is satisfied if an attorney

2   for Respondent has an opportunity to cross-examine and

3   present evidence.  A parent does not need to be here.

4            However, when -- as the case is here today, mom

5   chose to represent herself.  This Court gave her two months

6   to find another attorney after Mr. Pickard withdrew.

7            She chose not to get another attorney.  She had

8   an opportunity to cross-examine and present evidence.

9            She was here yesterday for the full-day hearing,

10  but chose not to be present today.

11           It would have been her opportunity to be able to

12  present witnesses or for herself to testify today, and she

13  chose not to be here.

14           This Court is finding that due process is

15  satisfied for her.

16           The primary consideration is the physical,

17  mental, and emotional needs of the children.

18           The Court is going to find that Rachael Ryan,

19  the parenting time worker, is an expert in social work with

20  an emphasis in child protection.

21           The Court finds her open, honest, and credible,

22  and she had a great memory about this case, because she's

23  been with this family for quite sometime.

24           The Court next heard from Ms. Quinn.  She's an

25  expert in social work with an emphasis in child protection.

62

1    kids being locked in cages, but mentally, when you are

2    abused mentally like this, this is a lifetime of therapy

3    for these girls, a lifetime because it was so repetitive

4    and so manipulative.

5         So I can't remember if the Court found that the

6    conduct or condition is unlikely to change within a

7    reasonable time.  This Court is finding it is unlikely to

8    change within a reasonable period of time.

9         This Court is also going to find that this

10   Department made more than reasonable efforts.  There were

11   MDT meetings every month.  There were Links meetings.

12   There was multiple research done on different providers for

13   each one of the components, because mom would not

14   participate in providers until she approved of them.  And

15   so there was a ton of back and forth, and it took a long

16   time for her to actually get engaged, and, ultimately, when

17   she did, she was trying to check the box and never changed.

18        So the Court is finding it is in the best

19   interest to terminate parental rights.  Before I get to

20   less drastic alternatives, I believe in over two years

21   being on the DNN docket this might be the second or third

22   time this Court has only terminated one parents parental

23   rights and not both.

24        But of the times that this Court has done that,

25   which is few and far between, this case is the biggest

5/19/2021        Filing seeks to release mother jailed for criticizing judge's order terminating parental rights | Colorado Springs News | gazette.com

https://gazette.com/news/filing-seeks-to-release-mother-jailed-for-criticizing-judges
rights/article_7d05e57a-b818-11eb-8ee4-934aa8cfc74a.html

TOP STORY

DATE FILED: May 26, 2021 4:12 PM

# Filing seeks to release mot jailed for criticizing judge's order terminating parental rights

Christopher Osher chris.osher@gazette.com
May 18, 2021

An Arapahoe County mother of three has been incarcerated for more than nine months due to a "series of confusing and unconstitutional orders" that barred the woman from discussing with others or speaking out against a ruling terminating her parental rights, a court filing states.



Natalie T. Chase

EXHIBIT
2

The orders came from former District Court Judge Natalie Chase, who in April resigned amid reports of racial misconduct after acknowledging that she "undermined confidence in the impartiality of the judiciary." The mother, Courtney Propst, received four contempt-of-court findings and has been incarcerated at the Arapahoe County Jail since August 31, 2020, and is not scheduled for release until December.

Suzanne Taheri, ▮▮▮▮▮ new lawyer, said in a May 9 court filing that the jailing of her client violated the U.S. Constitution's First Amendment, which grants a right to free speech, and the Eighth Amendment, which bars "cruel and unusual punishment." Taheri sought a court order to seal the filing from public view, but The Gazette obtained a copy because no sealing order has been issued. Her filing has been referred to a senior judge in Arapahoe County for consideration. Taheri also said in the filing that the judge also violated ▮▮▮▮▮ 14th Amendment right to due process due to bias.

Taheri said she could not discuss the case due to the gag order from the judge.

The Colorado Supreme Court accepted Chase's resignation and censured her in April after the Colorado Commission on Judicial Discipline revealed probable cause existed to initiate formal proceedings against Chase for multiple matters unrelated to ▮▮▮▮▮ case. As part of her resignation, Chase stipulated that she used the N-word in front of a Black court employee, directed her office staff to perform personal assignments and called a fellow judge a derogatory name.

The ▓▓ case revolves around a contentious divorce. During the case, the judge terminated ▓▓ parental rights to her three daughters. Richard Bednarski, the lawyer who represented the husband, did not immediately respond to emails and telephone messages seeking comment on the case.

"The motion to terminate my rights as a loving and fit parent does not come close to the legal standard in Colorado to permanently terminate a parent's rights," a statement ▓▓ read during a court proceeding states. "I have been proven mentally fit to parent my children by two psychological evaluations with support from three other mental health professionals. I love my children. I believe in my children and want the very best for them, and that includes having a loving relationship with each of my children."

▓▓ did not supply The Gazette with the statement, which was obtained elsewhere.

The divorce case remains sealed from public view, making it difficult to understand the judge's reasoning. A woman who answered a phone number that was listed for Chase said she was not the former judge and hung up.

The court filing seeking to release ▓▓ from custody states that Chase's order barring ▓▓ from discussing the case with anyone but the attorney representing her was unconstitutionally restrictive.

The filing states Chase's orders stripped ▓▓ of her ability to obtain legal representation after another attorney bowed out. Propst also lost her alimony and had her assets frozen after the court issued a default judgment in a defamation lawsuit brought by her husband, according to the filing.

"During periods of time when petitioner didn't have an attorney, she was barred from seeking help to obtain one because that, too, would be discussing the case," the filing on her behalf states.



The filing states that during one hearing, Judge Chase "made her hostility" to clear. The judge stated during a June 2019 hearing that the allegation that had communicated with one of       children made her "blood start to boil." The judge didn't take testimony on that allegation, the filing states.

The judge ordered       in May to take down a social media post about the case within one hour and found       in contempt in August. The judge issued another order in August that stated that "no party" is to "release any filing" on this case to "any third party."

A portion of the transcript of a Sept. 23 hearing is recited in the court filing seeking       release. It reflects that the judge stated during the hearing: "She is not to communicate, and I don't know how many times I have to say this — to communicate with third parties about this case. I expect another contempt coming down."

In a response to a question about the order, Chase further stressed that her order extended even to discussions with medical care providers or therapists, the transcript reflects. "She may speak with her lawyers about this case," the judge stated during the hearing. "That's the only exception."

At least one of the contempt hearings against       was presided over by a different judge than Chase, but the filing seeking to free       said that Chase had insured that hearing would be tainted because she already had ruled that       testimony was not credible. The filing claims that Chase subjected       o "bias and hostile treatment."

"The record is replete with examples of the court's intolerance of any criticism of its rulings and found those were further evidence of contempt," according to the filing on       behalf.

The fourth contempt allegation was initiated in December and stemmed from an opinion column written by University of Colorado Regent Heidi Ganahl that appeared in The Gazette, the filing states. Because the divorce records are sealed, The Gazette could not review all the circumstances behind that contempt finding.

The column did not name ▇ or the judge in the case, but it quoted a statement from the mother that read: "A system shouldn't be able to destroy someone's life. Punished for protecting, for speaking truth, for loving my daughters so much — I would do anything for them."

Ganahl, in an interview, said she never actually talked to ▇ the mother, about the case. She said she knew about the case through Moms Fight Back, a nonprofit organization Ganahl founded that focuses on family court reform and other issues.

"I can't believe this judge can put her in jail for other people trying to help her," said Ganahl, who is no longer affiliated with Moms Fight Back. "We aren't even allowed to whisper in each other's ears about it. In my view, it's outrageous."

She said the gag order from the judge resulted in her receiving a telephone call from police, who initially told her she needed to take the column down because it violated the gag order. The police dropped any case against Ganahl after her attorney telephoned them. Ganahl said the police told her lawyer they had since learned that the gag order from the judge only restrained ▇ from talking about the case, not third parties who knew about it.

303-257-2601

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>Court Address:<br>7325 S POTOMAC ST, CENTENNIAL, CO, 80112<br><br><br>**In the Interest of:** ████████████ | DATE FILED: August 26, 2020 2:50 PM<br>CASE NUMBER: 2019JV158<br><br><br><br>△ **COURT USE ONLY** △ |
| | Case Number: 2019JV158 |
| | Division: 22        Courtroom: |
| **ORDER OF THE COURT SEALING THE COURT FILE** | |

Upon further reflection of this matter, the Court Orders this case SEALED. No party has access to the records of this case without Court permission. Parties may still file pleadings, and the Court may still issue orders. The Court Orders the following: NO PARTY IS TO RELEASE ANY FILING OR MINC ON THIS CASE TO ANY THIRD PARTY. NO PARTY IS TO ASK OTHER PEOPLE TO UPLOAD OR POST ANYTHING ON THE INTERNET REGARDING THIS CASE. THESE ORDERS SHALL STAND THROUGH THE REMAINDER OF THE CASE.

So Ordered.

Issue Date: 8/26/2020

*Natalie J. Chase*

NATALIE TURNMIRE CHASE
District Court Judge

**EXHIBIT**
**1**

DATE FILED: May 26, 2021 4:04 PM

NEWS > COURTS • News

# Racial slurs and secrecy: Colorado judge's rare public censure highlights challenges in the courts

Judge Natalie Chase's resignation illustrates issues with court transparency, diversity



Cliff Grassmick, Daily Camera

The Colorado Supreme Court building is seen in Denver on Dec. 9, 2015.

By **SHELLY BRADBURY** | sbradbury@denverpost.com | The Denver Post
May 4, 2021 at 6:00 a.m.

14

A couple years ago, a 16-year-old Black boy went to a party attended by mostly white kids in Cherry Creek, and one of those white kids used a racial slur.

**EXHIBIT**

**2**





Natalie Chase (Photo provided by the Colorado Office of Judicial Performance Evaluation)

A fight ensued, and the Black teenager was arrested on assault charges.

The juvenile criminal case then went before 18th Judicial District Court Judge Natalie Chase — the judge who last month was publicly censured by the Colorado Supreme Court, and agreed to resign, in part because she questioned a Black court employee about why white people couldn't use that same racial slur.

The circumstances of the family court judge's censure and resignation — and other emerging complaints about her time on the bench — present a microcosm of the larger issues now facing Colorado's court system, from growing calls for reform and racial justice, to the lack of diversity among the state's judges, to the largely secret system the state uses to discipline judges for violating ethical or professional rules.

"I feel heartbroken," said Melissa Michaelis Thompson, executive director of the Office of Respondent Parents' Counsel, which assigns attorneys to parents who can't otherwise afford representation in child welfare cases. "As someone who has worked for the government my entire career as a lawyer, when the government reveals something like this, it is heartbreaking."

Her agency last week asked people of color who previously had cases before Chase in Arapahoe County and believe they were treated unfairly to lodge complaints so the office can consider what options might be available to investigate and try to remedy any unfairness.

"If there is a parent who has a current case ongoing, lawyers can file motions, in the trial court or at the court of appeals, to have issues of bias addressed," she said. "More concerning is what happens with those families who think judicial bias impacted their case, but it's old, it's closed. The answers for those families are few and far between."

## "Not right from the gate"

Aresia Williams still gets angry when she talks about her experience in Chase's courtroom with her son, the Black teenager charged with assault after the fight in Cherry Creek.

Chase set a $50,000 bond for Williams' son, and during a hearing in late 2019 or early 2020, the judge expressed shock in court when she learned the boy's bond was paid, said Williams, and her attorney, Ben Hartford.

"We came into court, and she's like, 'Oh, he bonded out? How did he get out?'" Williams said. "In front of everybody. She questioned us, like, 'How could you guys afford an attorney?'"

Williams believed the judge was only questioning their financial standing because she is Black, and she was furious. Her attorney also was appalled by what he called Chase's patronizing and demeaning statements.

"This was totally unprofessional and out of hand," Hartford said. "…I'm in a place where I want to say something right then, but I'm constrained, because she is the judge who is going to hear the son's case. So I am biting my tongue… I don't even have the option of a jury. She is going to be the one to decide his fate. So I can't step on her toes and call out a wrong because of the position she is in."

Chase did not return requests for comment on this story. She acknowledged using the slur and apologized for her actions to the Colorado Commission on Judicial Discipline, according to the state Supreme Court's censure order.

Hartford could have filed a complaint with the Colorado Commission on Judicial Discipline, the board tasked with disciplining judges who violate professional or ethical rules, but he felt doing so would be fruitless and could provoke retaliation.

"I know how it made my client feel, but there wasn't anything overt in what (Chase) said," he said. "And frankly, filing judicial complaints — unless you have something so egregious, like what they have now, it rarely goes anywhere… if I file that complaint, it's like throwing a Molotov cocktail into the courtroom."

Williams' son ended up taking a deal and pleaded guilty to second-degree assault, in large part because Hartford felt going to trial before Chase was too risky. Had the teenager been convicted, he would have been taken out of his family home and put into a group home, Hartford said, even if an appeal was filed.



The plea deal allowed the case to eventually be sealed and expunged, with no mark on Williams' son's permanent record. The family was ordered to pay about $11,000 in restitution.

"She was not right from the gate," Williams said of Chase. "And the fact that she is having to resign because of all (this now), it makes me think, how many other people has she done this to?"

## Employees came forward

Court employees brought forward the concerns about Chase that led to her resignation, records show.

"We know parents have complained and experienced judicial bias in her courtroom," Thompson said, "but when you have a case of abuse and neglect and you say, 'Hey, the judge is biased,' people don't listen. So I think it's telling that what moved this to a censure was the employees."

Chase was censured by the Colorado Supreme Court on April 16, after she told a Black court employee that her son had gotten into trouble at school for using what the censure described as "the N-word," and then questioned the woman about why Black people can say that word but white people cannot. Chase used the racial slur several times during the conversation.

She also spoke about her political views while on the bench, according to the records, directed her court staff to carry out her personal business, called another judge an expletive and asked attorneys who'd anonymously reviewed her performance to tell her what they'd said.

Only five judges, including Chase, have been disciplined publicly in Colorado since 2010, and most of the cases follow a similar pattern of personal misconduct that occurs largely outside of court proceedings.

Laurie Booras called another judge "the little Mexican," Robert Rand made misogynistic and inappropriate comments, Lance Timbreza was charged with driving under the influence and Ryan Kamada tipped a friend off to a federal drug investigation.

That's in large part because the Judicial Discipline Commission does not handle matters of law — complaints about a judge's legal decisions must go through the regular appeal process in the courts — so the type of judicial misconduct that actually results in discipline is limited, said Chris Forsyth, executive director of The Judicial Integrity Project.

"If it actually happens in a case, then the discipline commission is going to say, 'Well that is subject to an appeal, so we can't discipline for that,'" he said. "In other states, that can be disciplined and they can take action on that. It's disingenuous of the Supreme Court and the Judicial Discipline Commission to throw out these cases trying to make it look like they are disciplining judicial misconduct, when they are not."

Public discipline for Colorado judges is very rare, but private discipline is also infrequent, according to annual reports published by the commission.

Between 2010 and 2019, the commission disciplined 51 judges privately. There are close to 400 judges in the state.

"(Chase's) comments were horrible," Forsyth said. "And show improper disposition for a judge. However… there are a lot of things going on out there that are a lot more detrimental to people's cases in court, and that is actually misconduct that is not prosecuted."

## Two cases on appeal

At least two cases in which Chase found someone in contempt of court are currently pending before the Colorado Court of Appeals.

In 2019, Chase refused to allow an attorney to advise his client, who faced criminal charges, of her Fifth Amendment right to remain silent while she was being questioned on the witness stand in a civil proceeding.

Chase found the attorney, Alan Rosenfeld, in contempt of court for continuing to do so, in what Denver civil rights attorney David Lane called "the most outrageous ruling I have seen in decades." He is representing Rosenfeld in an appeal, which is pending.

"The whole basis for the appeal is Natalie Chase doesn't know what she is doing as a judge," he said. "This is a blatantly, outrageously illegal order that a lawyer representing someone who is compelled to get on the witness stand can't advise that client to take the Fifth and remain silent."

Advising a client about remaining silent is such an accepted legal practice that it's not unusual for attorneys to stand next to their clients and advise them after each question whether to answer or remain silent, Lane said, but Chase wouldn't allow it. Rosenfeld resorted to knocking on a table to signal his client not to answer particular questions, according to the appeal.

Rosenfeld was fined $1,000 by another judge after he was found in contempt of court — a penalty that judges can hand out if someone violates a court order. Sanctions range from a fine to up to six months in jail.



In another case, Chase found that a woman, [redacted] had violated a protective order in a dependency and neglect case that prohibited her from "discussing the allegations of abuse or neglect which were investigated during the case or providing case related-information" to anyone not involved in the case. She was also prohibited from posting information on the allegations online, according to a notice of appeal filed April 22 by attorney Milo Schwab.

[redacted] has been in jail since Aug. 31 on a series of contempt charges handed out by three judges, including Chase. Attorneys on the delinquency and neglect case are subject to a gag order, and the case files aren't publicly available.

The latest contempt proceeding was initiated in December, two days after an opinion column written by University of Colorado Regent Heidi Ganahl was published in the Colorado Springs Gazette, according to the notice of appeal, which implies but does not detail a connection between the column and the contempt proceeding.

The column included details about [redacted] case, but did not mention her by name. Ganahl wrote that "a mom I know" was jailed, and that she couldn't name the woman because "the judge put a gag order on her, and anyone trying to help her." The column included a quote from a message the jailed woman wrote to a friend.

In March, Chase found that [redacted] had violated the protective order by "talking about motions to withdraw," "talking about attorneys in this case" and "talking about the unfairness of this case," and sentenced her to six more months in jail, according to the notice of appeal.

Because of the secrecy around [redacted] case, it is not clear whether [redacted] was held in contempt solely because of the column or if Chase found she violated the protective order in other ways.

Ganahl founded Moms Fight Back, a nonprofit organization that focuses on family court reform, among other issues, and said she heard about the case through that work. She declined to discuss [redacted] ase in detail, but called Chase "rogue and vindictive."

"If there is any fairness in the state's judicial system at all, the mom's sentence will be reviewed and overturned by an appropriate officer of the courts," Ganahl said.

Schwab argued in the notice of appeal that Chase's protective order was unconstitutional.

"In this case, it seemed to me (Chase) was doubling down on that impulse to shy away from any public review, and saying that any mention of any fact in any way related to this case was an effective criminal offense for my client," Schwab said. "And that's just not how the Constitution works. That is not how the First Amendment works."

On the other side of the case, representing [redacted] ex-husband, attorney Richard Bednarksi said Chase's actions were reasonable and in the best interest of the children involved. He said the notice of appeal does not give the full picture of Chase's ruling or the reasons she found [redacted] in contempt.

"I don't believe there is a real good argument for overturning the contempt finding," he said. "It does deal with defamatory comments being placed out there. And it deals with [redacted] continued violation of a court order."

He added that he has found Chase to be thoughtful and professional when he's come in front of her in court.

Attorney Jessica Peck also defended Chase's record on the bench, describing her as a capable and measured judge with a particular skill at handling cases involving children.

"It's a very complex analysis when it comes to protecting the rights of a parent versus protecting the rights of a child," Peck said. "She intuitively knew where that line was."

Peck added that Chase fostered a casual environment in her courtroom, but that she never had any hint as to Chase's political views.

"It was an environment where it seemed like people were really empowered, she would talk to the clerk, the county attorney, to the interns. There was a lot of casual conversation. There was no hierarchy, like there is in a lot of courtrooms," she said.

## "Black robe disease"

Retired Denver County Court Judge Gary Jackson, who has for years advocated for increased diversity in the courts and now serves as a senior judge, said judges walk a fine line between maintaining order and keeping a welcoming environment in their courtrooms.

He said there were several appropriate avenues, from meetings to educational seminars, where Chase could have discussed her thoughts on the racial slur she questioned the employee about — but the way she did it was offensive and inappropriate.

"Having these types of conversations in open court, or even in your chambers, where there is an imbalance of power between the judge and the people you are talking to, these are not the places to have those types of conversations," he said. "I'm just surprised and disappointed that she did not learn from the judges around her what would have been the appropriate way of conducting her courtroom."

He added that until a few months ago, there hadn't been a Black judge on the bench in Arapahoe County since 2010, and that having more people of color on the bench broadens the opportunities for judges to discuss such issues with other judges, rather than with subordinates or other court staff.



"I look at this as the 'black robe disease,' where some judges feel they have the privilege to say anything they want in their courtroom," Jackson said. "And whether you call that black robe disease, or, what I look at as being white privilege, it's still an issue that needs to be addressed."

Former 18th Judicial District Attorney George Brauchler, who publicly clashed with Chase in 2016 when she sentenced a youth pastor who sexually assaulted a 13-year-old girl to 90 days in jail and 20 years probation, said he wonders if Chase's censure signals a shift in how judicial discipline is handled in Colorado.

"I've never seen anything like this before," he said. "As long as I've been in the game, I've never seen a judge disciplined for the things Judge Chase was disciplined for. And part of me wonders if this is the kind of thing that has taken place, off the radar, in the past — but because of all the issues… and this new heightened scrutiny of the judiciary, if this isn't the first of some other things we'll see like this."

| Southwest Airlines grounds Colorado… | Editorial: Doug Lamborn's… |
|---|---|
|  ExtraSalty | DrDirt |
| The mask police of the skies want to show… | What does one expect from GOP candidate… |
| ⟲ Top Comment    👍 | ⟲ Top Comment    👍 19 |

Policies
Report an Error
Contact Us
Submit a News Tip

[T] The Trust Project

TAGS: **ABUSE, ARAPAHOE COUNTY, COLORADO SUPREME COURT, COURTS, DISCRIMINATION, FIRST AMENDMENT, GOVERNMENT, RACISM**

## **Shelly Bradbury** | Courts Reporter

Shelly Bradbury is the courts reporter at the Denver Post. She joined the paper in 2019 and previously worked as a crime reporter at the Pittsburgh Post-Gazette in Pennsylvania and the Chattanooga Times Free Press in Tennessee. She's been a reporter since 2012, focused on criminal justice. In Pittsburgh, she helped the newspaper earn the 2019 Pulitzer Prize for breaking news after a mass shooting at a local synagogue, and in 2020 she was named a finalist for the Pulitzer Prize in local reporting for an investigation into child sexual abuse among Amish and Mennonite communities.

sbradbury@denverpost.com

💌 Follow Shelly Bradbury @shellybradbury



SPONSORED CONTENT

**We customize. You could save $947** 🔗
By Liberty Mutual Insurance

💰

Liberty Mutual customizes your auto and home insurance so you only pay for what you need.

