IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 23-cv-01558-KLM**

K. A.,

    Plaintiff,

v.

MICHELLE BARNES, Executive Director of Colorado Department of Human Services, in her official capacity, *et. al.*,

    Defendants.

---

## THE ACDHS DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6), Defendants Arapahoe County Department of Human Services ("ACDHS"), ACDHS Division Manager Michelle Dossey ("Ms. Dossey"), in her official capacity only, and the Arapahoe County Board of County Commissioners ("Board") (collectively, the "ACDHS Defendants"), through counsel, hereby move to dismiss all claims asserted against them in Plaintiff K.A.'s Complaint [Doc. #1] on grounds K.A.'s claims are stale and are barred by Eleventh Amendment immunity, absolute immunity, the *Rooker-Feldman* doctrine, and the domestic relations exception, and because Plaintiff fails to identify any policy, practice or custom underlying her *Monell* claims.[1]

### Conferral

Undersigned conferred with Plaintiff's counsel. Plaintiff opposes the relief sought.

---

[1] *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (government entities cannot be held vicariously liable for actions of their employees under Section 1983 but rather, the entity's policies, practices, or customs must cause the injury).

## Overview

Plaintiff's Complaint, through the guise of 42 U.S.C. § 1983 claims, asks this Court to improperly intervene in a fully adjudicated state dependency and neglect proceeding by "revers[ing] the termination of Plaintiff's parental rights" and/or "order[ing] a new [termination] hearing." Compl., p. 32. Plaintiff further asks this Court to find various state court rulings violated her constitutional rights, including the issuance of protective orders and holding Plaintiff in contempt when she repeatedly violated the terms of the protective orders. Such requests improperly place this Court in the role of an appellate court in reviewing the propriety of state court decisions and improperly seeks to hold the Defendants liable for the decisions of the state court. The law is well-established through the *Rooker-Feldman* doctrine, however, that state court losers, like Plaintiff, may not repackage claims as Section 1983 actions in order to have the federal court reverse or review state court decisions.[2] Additionally, Plaintiff's claims must also be dismissed on grounds they all stem from actions which occurred outside the two-year statute of limitations for Section 1983 claims. If these multitude of jurisdictional defects were not enough, Plaintiff's claims must further be dismissed because she fundamentally fails to allege any facts establishing the critical elements to establish entity liability: Plaintiff fails to identify (1) *any* policy, practice, or custom underlying her claims attributable to the ACDHS Defendants, (2) identify how any such policy *caused* her claimed constitutional harms, or (3) allege facts establishing the ACDHS Defendants acted with deliberate indifference. Here, where Plaintiff's claims are stale, are barred by the domestic relations exception and the *Rooker-Feldman* doctrine,

---

[2] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

and Plaintiff has failed to state viable claims, her claims against the ACDHS Defendants must be dismissed as groundless and frivolous.

## Standard of Review

> Federal courts are courts of limited jurisdiction and they may exercise jurisdiction only when specifically authorized to do so. Given this limited authority, there is a presumption against federal jurisdiction. Because the party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction exists, it is the plaintiff who bears the burden of showing why the case should not be dismissed when…jurisdiction is challenged.

*Neiberger v. Hawkins*, 150 F. Supp. 2d 1118, 1120 (D. Colo. 2001) (citations omitted). "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citations omitted). Here, the ACDHS Defendants assert a facial attack.

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' Complaint must contain sufficient facts that, if assumed to be true, state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Argument

I. **The Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims**

    A. **Plaintiff's claims are barred by the domestic relations exception**

The domestic relations exception to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703

3

(1992). The domestic relations exception further requires federal courts to abstain from deciding whether a state domestic decree, such as a termination of parental rights, is void. *Watson v. State*, No. 15-9930-JAR-JPO, 2016 WL 1359868, at *3 (D. Kan. Apr. 6, 2016), aff'd, 668 F. App'x 840 (10th Cir. 2016). "Although the domestic relations exception is generally considered an exception to diversity jurisdiction, it may also be applied in federal question cases." *Id*. at *4.

> The … rationale for the domestic relations exception is premised on policy considerations. Courts have reasoned that: (1) the states have a strong interest in domestic relations matters and have developed an expertise in settling family disputes; (2) such disputes often require ongoing supervision, a task for which the federal courts are not suited; (3) federal adjudication of such disputes increases the chances of incompatible or duplicative federal and state court decrees; and (4) such cases serve no particular federal interest, while they crowd the federal court docket.

*Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989).

Here, Plaintiff explicitly asks the Court to: "[r]everse the termination of Plaintiff's parental rights; and if not, … [o]rder a new hearing wherein Plaintiff may appeal the termination of her parental rights," which runs afoul of the domestic relations exception. Compl., p. 32.

> The proper inquiry [in applying the domestic relations exception] focuses on the type of determination the federal court must make in order to resolve the claim. If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, … then the domestic relations exception is applicable.

*Vaughan*, 883 F.2d at 65. Because Plaintiff asks this Court to "reverse" or order a new termination hearing, Plaintiff seeks the resolution of actions typically reserved by state courts and, thus, this Court lacks jurisdiction. *Accord Alfaro v. Cty. of Arapahoe*, 766 F. App'x 657, 660 (10th Cir. 2019) ("The domestic-relations exception applies if the federal court is called upon to decide those issues regularly decided in state[-]court domestic[-]relations actions. And here, Alfaro asks us to do exactly that. She specifically prays that each order in the [d]omestic [c]ase to date is scrutinized

for its legal merits. Such scrutiny would necessarily entail decid[ing] those issues regularly decided in state[-]court domestic[-]relations actions. Accordingly, … the domestic-relations exception applies.") (citations, internal quotations omitted).

### B.  Plaintiff's claims are barred by the *Rooker-Feldman* doctrine

"*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012). Specifically, it bars cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1283 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Davis v. Schnurr*, 818 F. App'x 852, 853 (10th Cir. 2020) ("Federal courts lack appellate jurisdiction over claims decided in state court."). "Federal district courts do not have jurisdiction 'over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 (10th Cir. 1986) (case involving 42 U.S.C. §§ 1983 and 1985 claims). In evaluating whether *Rooker-Feldman* applies, courts look to the relief sought and determine if "the state court judgment *caused*, actually and proximately, the *injury* for which the federal court seeks *redress*." *Kanth v. Lubeck*, 123 F. App'x 921, 924 (10th Cir. 2005) (internal quotations omitted, emphasis in original).

Here, Plaintiff seeks relief from state court orders terminating her parental rights, issuing a protective order barring her from publicly discussing the abuse allegations related to her minor daughters, and holding Plaintiff in contempt and imprisoning her for violating the protective orders. In fact, Plaintiff seeks "damages for being unconstitutionally jailed" following the adverse

5

contempt rulings issued by the trial court, claims which she appealed and lost at the Colorado Court of Appeals. Compl., ¶¶ 97, 108, & p. 32. Thus, all of Plaintiff's claims stem from or are inextricably intertwined with the state court's orders and that is why Plaintiff goes as far as to request this Court reverse the termination decision. *Id*., p. 32. It is exactly these types of claims which call for an appellate review of state court judgments by the federal court which *Rooker-Feldman* bars and, therefore, this Court must abstain from ruling on Plaintiff's claims. *See Gomez v. Nickerson*, No. 22-cv-01546-MEH, 2022 WL 4131436, at *5 (D. Colo. Sept. 12, 2022) ("Plaintiff may not appeal the state court's ruling to this federal district court. To the extent Plaintiff is using this federal lawsuit to obtain relief from the state court's ruling, then his claims against the … Defendants are dismissed … for lack of federal subject matter jurisdiction.") (citations omitted).

### C. Plaintiff's claims against ACDHS and Ms. Dossey are barred by Eleventh Amendment immunity

The Eleventh Amendment bars actions for damages against a state or arms of a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). *See* Compl., p. 32 (request for relief noting Plaintiff is asserting damages claims as well as seeking declaratory relief).[3] Under Colorado law, county departments of human services are arms of the state which are immune from liability for damages under Section 1983. The case of *Pierce v. Delta Cty. Dept. of Soc. Servs.*, 119

---

[3] Plaintiff includes declaratory relief in her "Request for Relief," but she has failed to include any declaratory claims in her Complaint and, thus, has no basis for seeking this relief. Compl., pg. 32. The declaratory relief sought by Plaintiff relates to constitutional challenges of various state dependency and neglect statutes, state court procedural rules, and the constitutionality of the federal Indian Child Welfare Act ("ICWA"), which Plaintiff claims is discriminatory in that it only protects Native American families and not all families. *Id*. These claims are not directed against the ACDHS Defendants who were not responsible for promulgating or drafting those measures. The State Defendant (i.e., Ms. Barnes) would be responsible for defending any constitutional challenges to the state provisions, while Plaintiff would be required under Fed. R. Civ. P. 5.1 to notify the United States Attorney General prior to challenging the constitutionality of ICWA.

F.Supp.2d 1139 (D. Colo. 2000), is instructive. *Pierce* involved civil rights claims brought by the estate of a deceased minor, alleging the Delta County Department of Social Services ("DCDSS") failed to properly investigate reports of abuse.[4] The *Pierce* court found the DCDSS had few independent powers, received 80% of its funding from the state, and was designated by statute as an agent of the state Social Services Department, all of which supported the finding that DCDSS was an arm of the state and not a "person" available to be sued under Section 1983. *Id*. at 1148. The Colorado state courts reached the same conclusion in *Wigger v. McKee*, 809 P.2d 999 (Colo. App. 1990), finding "county departments of social services are 'functional divisions of the State Department of Social Services for the convenient administration of the state program and are not independent entities separate and distinct from the state.'" *Id*. at 1004 (citation omitted).

Numerous other decisions have uniformly held county departments of human services are arms of the state entitled to Eleventh Amendment immunity. *Accord Erker v. Schmeeckle*, No. 21-cv-02012-KLM, 2022 WL 2966858, at *5 (D. Colo. July 27, 2022) ("Based on the consistent authority holding that Colorado county departments of human services are arms of the state, the Court finds that Defendant [Morgan County Department of Human Services] is an arm of the state and is thus entitled to Eleventh Amendment immunity."); *Wise v. Arapahoe Cty. Dep't of Hum. Servs*., No. 20-cv-01952-MEH, 2021 WL 981318, at *6 (D. Colo. Mar. 16, 2021) (ACDHS entitled to Eleventh Amendment immunity); *Harper v. Montezuma Cty. Bd. of Cty. Comm'rs*, No. 18-cv-02225-WJM-STV, 2018 WL 10502084, at *4 (D. Colo. Dec. 3, 2018), report and recommendation adopted, No. 18-cv-2225-WJM-STV, 2018 WL 10502055 (D. Colo. Dec. 27, 2018) ("This

---

[4] In 1994, the Colorado General Assembly rebranded what were known as state and county departments of 'social services' as departments of 'human services.' *See Freeman v. White*, No. 05-cv-00164-EWN-CBS, 2006 WL 2793139, at *9 n.20 (D. Colo. Sept. 28, 2006).

Court…finds that MCDSS is an arm of the state."); *Schwartz v. Jefferson Cty. Dept. of Human Servs.,* No. 09-cv-00915-WJM-KMT, 2011 WL 1843309, at *6 (D. Colo. May 16, 2011) ("In view of the broad control the state has over the County Defendants…, the funding the County Defendants receive from the state, the County Defendants' lack of power to levy taxes, and the consistent rulings by this court and state courts that such departments are arms of the state, the Court finds that the County Defendants are arms of the state."); *T.D. v. Patton*, 149 F.Supp.3d 1297, 1309 (D. Colo. 2016) ("[T]he DDHS is entitled to Eleventh Amendment immunity, barring plaintiff's claim for damages against it."); *Freeman*, 2006 WL 2793139, at *11 (same); *Gonzales v. Pueblo Cty. Dept. of Soc. Servs.*, 1991 WL 270052, *1 (10th Cir. 1991) (same) (unpublished opinion); *Romero v. City & Cty. of Denver Dept. of Soc. Servs.*, 57 F. App'x 835, 837 (10th Cir. 2003) (same). Thus, Plaintiff's claims for money damages against the ACDHS are barred by Eleventh Amendment immunity and must be dismissed.

Additionally, because official capacity claims are just another means of suing the entity that employs the official, Ms. Dossey, who is sued in her official capacity only, is also entitled to Eleventh Amendment immunity. *See* Compl., p. 1 Caption (suing Ms. Dossey "in her official capacity" only)*; see also Pierce*, 119 F. Supp. 2d at 1148 ("[B]ecause a suit against an officer of the state in his or her official capacity is 'no different from a suit against the State itself,' plaintiffs' official-capacity section 1983 claims against Delta Social Services employees … are also dismissed [pursuant to Eleventh Amendment immunity]."); *Ruiz*, 299 F.3d at 1180 (same). All of the money damages claims asserted against the ACDHS and Ms. Dossey, therefore, must be dismissed based on Eleventh Amendment immunity.

      **D.**      **Plaintiff's official capacity claims against Ms. Dossey must be dismissed because they are redundant to the claims asserted against the ACDHS**

Plaintiff sues Ms. Dossey in her official capacity as an employee of ACDHS. Plaintiff also separately sues ACDHS. Where a party sues an entity and then sues employees of that entity in their official capacity, the official capacity claims are redundant and should be dismissed. *See, e.g., Tavasci v. Cambron*, No. CIV 16-0461 JB/LF, 2017 WL 3173011, at *28 (D.N.M. May 31, 2017) ("courts routinely dismiss official-capacity claims against officials as redundant with claims against the entity itself."); *Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1087 (D. Colo. 2010) ("'An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works.' … Where, as here, the entity is also named, there is no need for an official-capacity claim.") (citations omitted). Thus, the official capacity claims against Ms. Dossey should be dismissed as redundant to the claims against ACDHS.

**II.**      **Plaintiff fails to state cognizable claims for relief under Rule 12(b)(6)**

      **A.**      **Plaintiff's claims are all barred by the statute of limitations**

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citations omitted). "[T]he statute of limitations for §1983 actions brought in Colorado is two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). Although the statute of limitations for Section 1983 claims are determined by reference to state law, when a claim accrues is governed by federal law. *Nicholas v. Boyd*, 317 F. App'x 773, 778 (10th Cir. 2009). "'A civil rights action accrues when the plaintiff knows or has

9

reason to know of the injury which is the basis of the action.'" *Id*. (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998)).

The relevant events described in the Complaint are as follows:

- On February 22, 2019, the ACDHS filed a dependency and neglect action against Plaintiff and awarded father with full temporary custody. Compl., ¶¶ 28-29.

- On April 8-12, 2019, a jury adjudicated the children dependent and neglected by K.A. K.A. appealed this finding, which was upheld by the Colorado Court of Appeals. *Id*., ¶¶ 31, **Ex. A-1** (Order affirming dependency and neglect finding against K.A.).[5]

- In May 2020, the ACDHS moved to terminate K.A.'s parental rights and filed a protective order to prohibit K.A. from posting on social media sites allegations of abuse about her minor children, which was granted. *Id*., ¶¶ 63-64.

- In August 2020, K.A. was held in contempt for violating the protective order and sentenced to jail for five months. *Id*., ¶ 66.

- On August 25, 2020, a termination of parental rights hearing for K.A. was held and K.A.'s parental rights were terminated. *Id*., ¶¶ 67, 70.

- K.A. was incarcerated for the contempt violations related to violating the protective order from August 31, 2020 to July 2, 2021. *Id*., ¶ 130.

- On Nov. 6, 2020, K.A. was found in contempt again and sentenced to a second and third consecutive six-month sentences. *Id*., ¶¶ 86, 87.

- On March 21, 2021, K.A. was found in contempt on a fourth citation and sentenced to another six months. *Id*., ¶ 93.

- K.A. appealed her contempt citations to the Colorado Court of Appeals in April 2021. This appeal raised the same First Amendment issues described in her Complaint. K.A.'s appeal was dismissed by the Colorado Court of Appeals as not timely filed. The Colorado Supreme Court denied certiorari. *Id*., ¶¶ 97, 108, 109.

- On May 10, 2021, Plaintiff filed a writ of habeas corpus in state court alleging Plaintiff was being held in violation of her First, Eighth, and Fourteenth

---

[5] This Court may take judicial notice of state court records without converting a motion to dismiss into summary judgment motion. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

   Amendment rights. *Id*., ¶ 98; **Exs. A-2 & A-3** (Plaintiff's habeas petition and Order dismissing it).

- On June 18, 2021, the Colorado Court of Appeals dismissed Plaintiff's appeal of the termination of her parental rights as untimely. The Colorado Supreme Court denied certiorari on this petition too, on September 7, 2021. *Id*., ¶ 105.

Here, Plaintiff filed this lawsuit on June 20, 2023. The only events identified in the Complaint, which occurred after June 20, 2021 and would not be time barred, were the Supreme Court denying her petition for certiorari of the dismissal of her appeal of the termination of her parental rights (*id*., ¶ 105) and the Court of Appeals denying her appeal of the contempt order (and the subsequent denial of certiorari by the Colorado Supreme Court on that issue, too) (*id*., ¶¶ 97, 108, 109). All of the underlying predicate acts attributed to employees of the ACDHS in the Complaint occurred more than two years before Plaintiff's lawsuit was filed, and, thus, Plaintiff's claims are time barred. Moreover, Plaintiff admits she was aware of her constitutional claims prior to the expiration of the statute of limitations when she filed a habeas petition raising these same constitutional claims in May of 2021. *Id*., ¶ 98, **Ex. A-2**. Accordingly, because all of the allegations related to actions of ACDHS employees occurred prior to June 20, 2021 and Plaintiff was aware of her constitutional claims at least as early as May 2021, K.A.'s claims against the ACDHS Defendants are untimely and must be dismissed.

   **B.**  **Plaintiff fails to allege sufficient facts to state any claims for entity liability**

Plaintiff's Complaint does not name any employees of the ACDHS in their individual capacity. Instead, all of Plaintiff's claims seek to impose entity liability. However, "Section 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *see also Iqbal*, 556 U.S. at 663 (vicarious liability not available under Section 1983). Instead, in order to allege a viable entity claim, Plaintiff must allege facts showing

11

(1) her constitutional rights were violated, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). Here, the allegations are all specific to her own case (meaning she fundamentally fails to allege any kind of policy, custom, or practice), and there are no allegations that any of the alleged inappropriate acts of the various ACDHS employees identified in the Complaint were *caused* by any unconstitutional policy, practice, or custom of the ACDHS.[6] Finally, a plaintiff must also establish the entity acted with deliberate indifference. *Id.* at 410 ("'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a

---

[6] Plaintiff cannot rely on the underlying predicate acts she alleges by ACDHS employees to establish entity liability. First, at best, this would state a vicarious liability claim, which is insufficient under Section 1983. Second, even under a less stringent vicarious liability standard, Plaintiff's claims would fail because they are predicated on actions for which the ACDHS employees would be entitled to absolute immunity. Specifically, Plaintiff identifies actions taken by the ACDHS's attorneys in prosecuting the case, including alleging the ACDHS's attorneys conspired to put on false testimony (Compl., ¶¶ 122, 125, 216), advocated based on "discredited" theory (*Id.*, ¶ 146), falsely included facts in pleadings submitted to the court (*Id.*, ¶ 119), and conspired with the state court judge on rulings through ex parte communications (*Id.*, ¶ 115). Not only do these allegations lack factual specificity, but these are actions for which the ACDHS attorneys would be entitled to absolute immunity and the caseworkers would be entitled to absolute immunity for their testimony. *See PJ ex rel. Jensen v. Wagner,* 603 F.3d 1182, 1195 (10th Cir. 2010) (attorney's actions as an advocate in prosecuting dependency and neglect action entitled to absolute immunity); *English v. LeBaron,* 3 F. App'x 872, 873 (10th Cir. 2001) ("When testifying as a witness under oath, social workers are absolutely immune."). The Tenth Circuit has further held the absolute immunity afforded witnesses bars any claim against prosecutors and witnesses for allegedly conspiring to submit false testimony. *See Miller v Glanz*, 948 F.2d 1562, 1571 (10th Cir. 1991) ("[W]e conclude that the extension of absolute immunity from civil liability to those who allegedly conspire to present perjured testimony … serves the same important purposes of immunity to witnesses themselves."). Finally, allegations of a conspiracy between a judge and prosecutors is similarly barred by absolute immunity. *See Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("We therefore hold that a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, … does not pierce the immunity extended to judges and prosecutors."). Thus, not only does K.A. fundamentally fail to allege facts establishing any entity claim against ACDHS, but the underlying allegations are all based on acts for which the ACDHS employees would be entitled to absolute immunity precluding any entity claim.

known or obvious consequence"). Plaintiff likewise alleges no facts establishing deliberate indifference by the ACDHS Defendants.

In fact, there are no factual allegations at all addressing what the ACDHS' policies were, how they might be inadequate, nor how they were linked to the alleged actions of any ACDHS employee, foreclosing Plaintiff's ability to state a *Monell* claim. *Accord Chambers v. Cooper*, No. 13-cv-00393-REB-MEH, 2014 WL 561371, at *2 (D. Colo. Feb. 12, 2014) (Where no facts "alleged [supported] plaintiff's bare allegation [of the existence of a policy].... Merely parroting the language of the relevant standard, as plaintiff has done … is not sufficient to withstand a motion to dismiss.") (citations omitted). Plaintiff fundamentally fails to allege facts establishing *any* of the elements required to state an entity claim under Section 1983, requiring dismissal of her claims.

### C. The Board is not the proper entity for claims based on the ACDHS's policies

In Colorado, county departments of human services are arms of the Colorado state department of human services, which follow the policies of the state. *Wigger*, 809 P.2d at 1004. Thus, the Board is not the proper entity for claims based upon ACDHS's policies. The case of *Doe v. Woodard*, No. 15-cv-01165-KLM, 2016 WL 11658659, at *16 (D. Colo. Sept. 30, 2016), is instructive. In *Woodard*, the court analyzed whether entity claims based on human services' policies could be asserted against a board of county commissioners and found they could not.

> Colorado law makes clear that the state board of human services and its executive director have the final authority to create and implement rules for the operation of the various county branches of the DHS, and thus are ultimately responsible for any policies implemented by the county branches. *See* C.R.S. §§ 26-1-107, 108…. Thus, even accepting as true Plaintiffs' allegation that Defendant BOCC has some influence over El Paso County DHS, that allegation is insufficient as a matter of law, because Colorado law vests "final policymaking authority" with Colorado DHS. * * * Accordingly, … Plaintiffs have not adequately alleged that Defendant BOCC is responsible for the policy which allegedly caused the violations of Plaintiffs' constitutional rights.

13

*Id*. at *16. The same analysis applies here. The policies of the ACDHS are state policies not policies of the Board and, thus, the Board is not the correct entity and must be dismissed as a party.

## Conclusion

After being found to have coached and coerced her minor daughters into falsely stating their father sexually abused them and having her parental rights terminated as a result of this reprehensible behavior and having another state court enter judgment for defamation in favor of father and the minor children in the amount of $1.76 million dollars (Compl., ¶ 85) related to these same baseless and false allegations of sexual abuse, Plaintiff now brings this untimely, groundless, and frivolous lawsuit as a further attempt to smear father and publish records of the false abuse allegations against her daughters knowing that a party cannot be found liable for defamation based on the filing of legal pleadings. Furthermore, Plaintiff has baselessly named the ACDHS Defendants seeking relief they have no ability to give (*see* Compl., p. 32) and improperly seeking to hold the ACDHS Defendants liable for court orders entered separately by a state judge. That Plaintiff may believe the timeframe for filing appeals stemming from dependency and neglect actions in Colorado is unfair or that she disagrees with the provisions of the Indian Child Welfare Act does not give her the right to sue the ACDHS Defendants and force them to defend against the constitutionality of these statutes or stand trial for the decisions of a state court judge. This Court should see through Plaintiff's futile attempts to untimely relitigate her state court claims in federal court and dismiss these already decided, stale claims.

WHEREFORE, the ACDHS Defendants respectfully request this Court dismiss all claims asserted against them.

Submitted this 17th day of July, 2023.

                 **Arapahoe County Attorney's Office**

                 By: *s/ Writer Mott*
                 Writer Mott
                 Deputy County Attorney
                 Rebecca M. Taylor
                 Senior Assistant County Attorney
                 5334 S. Prince Street
                 Littleton, CO 80120-1136
                 Tele: 303-795-4639
                 E-mail: Wmott@arapahoegov.com
                 E-mail: Rtaylor@arapahoegov.com

                 *Attorney for Defendants Arapahoe County Department of Human Services, Michelle Dossey, and the Arapahoe County Board of County Commissioners*

## Certificate of Service

This is to certify that on the 17th day of July, 2023, I electronically filed the foregoing **THE ACDHS DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

Suzanne Taheri
st@westglp.com

Kristine L. Brown
kristiburtonbrown@gmail.com

                 *s/ Stacy Hines*
                 Stacy Hines, Paralegal
                 Arapahoe County Attorney's Office