

| | DATE FILED: May 9, 2021 2:16 PM<br>FILING ID: 387911B95C4ED<br>CASE NUMBER: 2021CV30827 |
|---|---|
| DISTRICT COURT, Arapahoe County, Colorado<br><br>Arapahoe County Justice Center<br>7325 s. Potomac Street<br>Centennial, Colorado 80112 | |
| C▮▮▮▮▮ P▮▮▮▮,<br>**Petitioner,**<br><br>v.<br><br>**Tyler Brown, in his Official Capacity as Arapahoe County Sheriff,**<br>**Petitioner.** | ▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>Division            Courtroom |
| Attorney for Petitioner:<br>Suzanne Taheri-Staiert, No. 23411<br>Maven Law Group<br>1600 Broadway, Suite 1600<br>Denver, CO 80202<br>Phone Number: (303) 263-0844<br>Email: staheri@mavenlawgroup.com | |
| **WRIT OF HABEAS CORPUS PURSUANT TO C.R.C.P. 106(a)(1)** | |

C▮▮▮▮ P▮▮▮ ("Petitioner") brings this Writ of Habeas Corpus Pursuant to C.R.C.P. 106(a)(1). As grounds therefore, Petitioner verifies the following:

**Jurisdiction and Procedure**

1. This Court has jurisdiction pursuant to C.R.C.P. 106(a)(1).

2. The court's power to hear habeas corpus petitions derives from constitutional and statutory authority. The Colorado Constitution grants the right to seek a writ of habeas corpus. Colo. Const. art. II, § 21. The Habeas Corpus Act declares it "lawful ... to apply to the ... district courts for a writ of habeas corpus." § 13-45-101(1). Thus, all district courts in Colorado have subject matter jurisdiction to hear and decide habeas corpus cases. *See Horton v. Suthers*, 43 P.3d 611, 615 (Colo. 2002).

1

Exh. A-2

3. Petitions shall be in writing and signed by the prisoner or some person on his behalf setting forth the facts concerning imprisonment and shall be accompanied by a copy of the warrant of commitment, or an affidavit that the said copy has been demanded of the person in whose custody the prisoner is detained and refused or neglected to be given. *Jones v. Williams,* 2019 CO 61, 443 P.3d 56.

4. "The court to which the application is made shall forthwith award the writ of habeas corpus, unless it appears from the petition itself, or from the documents annexed, that the party can neither be discharged nor admitted to bail nor in any other manner relieved." *Christensen v. People,* 869 P.2d 1256 (Colo. 1994).

5. Section 13-45-101, C.R.S. provides that the court shall forthwith issue a writ of habeas corpus unless the petition or attached documents are facially deficient. The writ is to be directed to the person in whose custody the petitioner is detained and made returnable forthwith.

6. The only parties to a habeas corpus proceeding are the petitioner and the person holding the petitioner in custody, and the only issue for resolution is "whether the custodian has authority to deprive the petitioner of his liberty." *Cardiel v. Brittian*, 833 P.2d 748, 751 (Colo. 1992).

7. The Habeas Corpus Act contemplates a less structured and more abbreviated hearing procedure than that utilized in other civil proceedings. Under the Act, "[t]he court shall proceed in a summary way to settle the facts by hearing the testimony and arguments ... of the prisoner and the person who holds him in custody and shall dispose of the prisoner as the case may require." C.R.S. § 13–45–103(1). *See Cardiel,* at 752.

8. After a writ is issued by the court and directed to the person in whose custody the prisoner is detained, it shall be returnable within three days if the prisoner is within 20 miles. C.R.S. § 13-45-101.

9. Petitioner's counsel requested a warrant of commitment from the Arapahoe County Detention facility. The facility referred counsel to the Sheriff's Department. The Department was unable to provide the warrant as requested.

**Factual Allegations**

10. In 2016, Petitioner and her former spouse, C.P. separated and filed a petition to dissolve the marriage. *See* 2016CV32871. This was the beginning of a series of cases and motions C.P. and the County would file against petitioner, effectively weaponizing the court system against Petitioner.

11. Over the past five years the Court has issued a series of confusing and unconstitutional protective orders barring Petitioner from even mentioning C.P., her children or anything aspect of her case or her sentence with any person except her attorney. During periods of time when Petitioner didn't have an attorney, she was barred from seeking help to obtain one because that too would be discussing the case.

Exh. A-2

12. During the Petitioner's incarceration the Court ordered a default judgment against Respondent on a civil matter filed by C.P. Thereafter, Petitioner's assets were frozen and C.P. discontinued alimony payments. Petitioner now has no access to any financial resources.

13. Petitioner has been subjected to bias and hostile treatment from the Court. Presiding over a hearing in June of 2019, Judge Chase first made her hostility toward Petitioner clear and evident. Responding to an allegation that Petitioner had been in communication with one of the children, the Court stated the allegation made her "blood start to boil" towards Petitioner. (Transcript, 6/10/19, p. 32) The Court made this statement in response to a mere allegation from C.P.'s counsel, without a shred of evidence or any opportunity for response by Petitioner.

14. On August 5, 2020 Petitioner was first held in contempt in 2016CV32871. Three more contempt orders would follow. Defendant has now been in the custody of the Arapahoe County Sheriff since August 31, 2020. She is currently serving a sentence for her third contempt. A six-month consecutive sentence on a fourth contempt is set to begin in June.

15. The third contempt order stems from the potential violation of three protective orders.[1] The first order issued on May 7, 2020. Petitioner was ordered to take down social media posts related to allegations made against C.P within one hour of the order. On August 26, 2020, another order was entered, "No party is to release any filing or minc on this case to any third party. No party is to ask other people to upload or post anything on the internet regarding this case. These orders shall stand through the remainder of the case."

16. On September 23, 2020 a new permanent protection order was issued by Judge Chase. The transcript of that hearing again demonstrates a clear bias against Petitioner by the Court:

> THE COURT: She [Petitioner] is not to communicate, and I don't know how many times I have to say this -- to communicate with third parties about this case. *I expect another contempt coming down*, I have to be honest given what I just heard. I am shocked that being put in jail for a 16-CV case and this Court hasn't even done the 19-JV sentencing, that we're still having these issues. I am shocked. Nothing is getting through to her. So no contact with third parties about this case. I don't know how else to make it clear. Can you make sure that says exactly that. (emphasis added)
>
> MS. EMERSON: My only clarifying question would be when you say no contact with third parties about this case, would there be any exceptions for, say, a medical care provider like a mental -- like a therapist or something like that?
>
> THE COURT: I'm not sure why that would be relevant given that this Court has already terminated parental rights for her, so no. She may communicate with her

---

[1] Counsel for Petitioner does not have access to the court files as they have all been sealed. There is a pending motion to release the pleadings filed by co-counsel in 19JV158. As a result, Petitioner relies on a record provided by past counsel on the matters.

> lawyers about this case. That's the only exception.
>
> MS. EMERSON: I just want to clarify, Your Honor. So will the protection order read as broadly as she cannot speak to anyone about this case or else she would be in violation of the protection order?
>
> THE COURT: Yes.
> MS. EMERSON: Zero exceptions other than attorneys?
>
> THE COURT: Yes. And this Court had orally stated that, I can't even remember how many times during the life of this case and she did not stop.

(Hearing transcript, September 23, 2020 p.77-78)

17. On October 1, 2020, C.P. took the Court up on its invitation to file a contempt motion against Petitioner. The motion alleged that on August 14th and September 9th, Petitioner either herself or through third parties, posted information on social media, which violated one of the series of protection orders.

18. A hearing was held on the contempt motion on November 6, 2020. The hearing was presided over by Judge Michaelson. At the start of the hearing, the Court noted that Petitioner had been sentenced that morning on her second contempt wherein she had been adjudicated "incredible as a matter of law" by Judge Chase. (19JV150, 11-6-2020, Transcript, p. 15, "That's an interesting condition. I'll have to consider how that affects this Court's findings.")

19. At the conclusion of the hearing, Petitioner was found guilty of this third contempt charge. On November 13, 2020 Petitioner was sentenced to a term of six months in jail to run consecutive to the previous contempt from the juvenile court.

20. On December 5, 2020 the September 23, 2020 was modified:

> Order modified in on December 5, 2020 in an order on a motion for post-conviction relief. **ORDERS** that Petitioner shall be restrained from posting any information related to the allegations of abuse or neglect which were investigated during this case on any website or social media outlet. This includes posting through a third party, which is subject to the provisions outlined above, as Petitioner may be held liable for directing any third party to post such information. Further, the Court further **ORDERS** that Petitioner shall be restrained from discussing the allegations of abuse or neglect which were investigated during this case or providing any case-related information, including but not limited to any documents within the case file, to any third party who does not have a legal duty of confidentiality to Petitioner. Thus, Petitioner may discuss this case with her attorneys, therapists, or doctors, but she may not direct these third parties to release or disseminate case-related information to any other third party or to the public.

21. On December 28, 2020 a column appeared in the Colorado Gazette that became the basis

for a fourth contempt allegation. https://gazette.com/opinion/a-sick-mom-alone-in-a-cell-on-christmas-eve/article_8d2d334e-47a8-11eb-bf8e-cf90c19812e0.html Although the article did not name Petitioner it purported to contain a quote from her, "A system shouldn't be able to destroy someone's life. Punished for protecting, for speaking truth, for loving my daughters so much – I would do anything for them." The column also contained criticism of the Court's handling of the case.

22. C.P. filed another Motion for Issuance of Contempt Citation. A hearing was set for March 5, 2021. Judge Chase was again the presiding judge over the Contempt motion.

23. On March 12, 2021, Judge Chase found Petitioner guilty of contempt and sentenced her to another six-month consecutive sentence. Her findings concluded that the content in the article violated the protective order and Petitioner was responsible for disclosing the information contained therein along with other non-published communications. Specifically, the Court found that speaking about legal representation was a violation of the order: "They are talking about attorneys in this case. They are talking about the unfairness of this case, which is in direct violation of this Court's order." 3-12-21 Transcript, p.59; "[t]hey are talking about motions to withdraw, which is part of the case, which is the direct violation of this Court order." Transcript, p,59; "Mom also talks about asking for in-home which is a direct pleading that was put into which is another violation of this Court's detention, this case, order." Transcript, p.60.

24. The record is replete with examples of the Court's intolerance of any criticism of its rulings and found those were further evidence of contempt: "It should be noted that there was discussion within these exhibits and Ms. McLean that this Court specifically has violated the numerous rights of Ms. A▮." Transcript, p. 60; "The Court is obligated to hear motions before it. So when this Court hears information that there is numerous pleadings, and the Court is just doing this to be nasty, so to speak, this Court is obligated under the Constitution to hear motions that come before the Court, period." Transcript, p. 61.

25. Judge Chase has since resigned. According to the order from the Colorado Supreme Court, "You [Judge Chase] acknowledge you also undermined confidence in the impartiality of the judiciary by expressing your views about criminal justice, police brutality, race and racial bias, specifically while wearing your robe in court staff work areas and from the bench. "You acknowledge that your statements violated Canon Rule 2.3, which prohibits a judge from manifesting bias or prejudice based on race or ethnicity by word or action." https://www.denverpost.com/2021/04/16/colorado-judge-resignation-natalie-chase/

## FIRST CLAIM FOR RELIEF

(Due Process)

26. Paragraphs 1-25 are incorporated as though set forth fully herein.

27. It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton* v. A.T. Massey Coal Co., Inc  556 U.S. 886, at 876, 129 S.Ct. 2252 (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)).

5

Exh. A-2

Most judicial bias issues are governed by standards set in state and federal disqualification statutes and judicial codes of conduct, but the Due Process Clause sets a constitutional baseline. *Id.* at 876–77, 129 S.Ct. 2252; *see* U.S. CONST. amend. V; *see id.* amend. XIV, § 1.

28. A judge must not be tainted by bias or partiality. *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002). A defendant has a constitutional right to have an impartial judge sit on her case at all stages of the proceedings. *People v. Hagos*, 250 P.3d 596, 611 (Colo. App. 2009). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

29. Because there is no provision in the Colorado Children's Code or the Colorado Rules of Juvenile Procedure for disqualification of a judge, the Court looks to the Colorado Rules of Civil Procedure for the standards applicable to a motion for disqualification. *See, e.g., People in the Interest of M.M.,* 726 P.2d 1108, 1119 (Colo.1986). C.R.C.P. 97 states, in pertinent part, as follows:

> A judge shall be disqualified in an action in which he is interested or prejudiced ... or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, or any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit.

30. C.R.C.P. 97 echoes Canon 3 C(1)(a) of the Colorado Code of Judicial Conduct, which states that a judge should disqualify himself in any proceeding in which his impartiality may reasonably be questioned, including instances where "he has a personal bias or prejudice concerning a party."

31. The purpose of the disqualification requirement is to prevent a party from being forced to litigate before a judge with a "bent of mind." *Johnson v. District Court,* 674 P.2d 952, 956 (Colo.1984). While a judge may be convinced of his own impartiality, she nonetheless may so act as to lead a party to reasonably conclude that he is biased or prejudiced in the pending litigation. It is this appearance of bias or prejudice which undermines not only a litigant's confidence in the fairness of the proceeding but also public confidence in the integrity and impartiality of the judicial system. *Id.*

32. In *Caperton*, the Court held that due process requires a judge to recuse herself when, based on "objective and reasonable perceptions," there is a "probability of bias" by the judge towards one of the litigants. Caperton v. A.T. Massey Coal Co., 129 S. Ct. 2252, 2262 (2009)

33. To define this test, the Court asked "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or pre-judgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.* at 2263–64.

34. The Court should have recused itself on any matters after its spontaneous outrage in 2019. In the September 23, 2020 hearing the Court issued a clearly unconstitutional protective order aimed at denying Petitioner an ability to speak, to assist in her defense, engage in religious freedom or seek medical treatment. In that same hearing, the Court prejudged future contempt filings.

35. The Court went on to sentence the Petitioner on a contempt case on November 6, 2020 wherein it was noted the Petitioner herself was "incredible as a matter of law." This notation had no legal basis.

36. Such a declaration further disqualified the Court from fairly adjudicating any future hearings. Moreover, the notation in the court file tainted proceedings in front of other judges, including the November 6, 2020 hearing for which Petitioner was sentenced and is currently being held.

37. Testimony that is "incredible as a matter of law" is that which is in conflict with nature or fully established or conceded facts. It is testimony as to facts which the witness physically could not have observed or events that could not have happened under the laws of nature. *See, e.g., Day v. State,* 92 Wis.2d 392, 400, 284 N.W.2d 666 (1979). *Accord, United States v. Emerson,* 128 F.3d 557, 561 (7th Cir.1997) ("unbelievable on its face, physically impossible for the witness to observe, or contrary to the laws of nature"); *United States v. Garner,* 581 F.2d 481, 485 (5th Cir.1978) ( "unbelievable on its face, [that is] facts that (the witness) physically could not have possibly observed or events that could not have occurred under the laws of nature"); *Parker v. State,* 280 Ala. 685, 691, 198 So.2d 261, 267 (1967) ("inherently and physically impossible because irreconcilable with physical facts and common observation"); *People v. Harlan,* 222 Cal.App.3d 439, 453, 271 Cal.Rptr. 653, 661 (1990) ("physical impossibility [or falsity that is] apparent without resorting to inferences or deductions").

38. By finding Petitioner incredible as a matter of law, the Court violated Petitioner's due process rights in foreclosing Petitioner's ability to testify on her own behalf at any subsequent hearing.

39. The Court's hostility toward Petitioner is evident throughout the record. Judge Chase has since resigned and admitted her past statements of bias created an appearance of impropriety. Judge Chase brought that bias into the courtroom in her dealings with Petitioner and tainted Petitioner's ability to obtain a fair adjudication from any judge reviewing Petitioner's file. Judge Chase's unconstitutional orders interfered with and continue to interfere with her ability to present or assist in her own defense and her ability to obtain counsel.

40. Viewing the record as a whole probable bias or pre-judgment has been clearly demonstrated and Petitioner cannot be held as a result of these defective and unconstitutional orders.

Exh. A-2

**SECOND CLAIM FOR RELIEF**

(Protective order violates Petitioner's First Amendment rights)

41. Paragraphs 1-40 are incorporated as though set forth fully herein.

42. The test for whether a content-based law passes strict scrutiny is if it is "necessary to serve a compelling state interest and is narrowly drawn to achieve that end." *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987). The government bears the burden of showing that the law is the "least restrictive means" of achieving its compelling interest. *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004).

43. When assessing whether a statute is narrowly tailored, "the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives." *Ashcroft*, 542 U.S. at 666. "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 817 (2000)

44. A trial court's order, entered in a civil case, that "seals the lips of 'all parties concerned with this litigation, whether plaintiffs or defendants, their relatives, close friends and associates . . . from *discussing in any manner whatsoever these cases* with members of the news media or the public'" held an unconstitutionally overbroad prior restraint. *CBS Inc. v. Young,* 522 F.2d 234, 237 (6th Cir.1975)

45. While there is an interest in protecting the confidentiality of children in the child welfare context is a compelling interest, the interests of the state can be served by a less restrictive means.

46. The protective orders in the instant case mirror those in *Young*. The orders barred the Petitioner from discussing any details of her case. Under the September 23rd order it extended to anyone except her attorneys, including therapists, caseworkers or clergy.

47. Even with later amendments to the order it was still so restrictive it extended to attempts to hire counsel. It extended to expressions of love for her children. It extended to attempts to gain work release from the jail. It extended to criticisms of the Court. In was a broad and sweeping order that prohibited her from speaking about any aspect of the case or the parties in even the most harmless ways.

48. The protective order interfered with Petitioner's ability to assist in her own defense. She could not speak to witnesses that may exonerate her at trial because to do so would in turn violate the order.

49. Key witnesses to the underlying contempt motions could not communicate with offers of assistance because they could not be made aware of the proceedings.

50. Upon information and belief, had the author of the column whose content so offended the

8

Exh. A-2

Court been asked to testify, she would have done so. Her testimony would include key facts that she had no contact with the Petitioner at any time during her incarceration and was not asked to post or write anything by a third party. The Petitioner was denied the opportunity to present this evidence because she was not able to communicate with the witness without violating the order. Such an order cannot stand and cannot form the basis of a contempt.

51. Ultimately, the Petitioner was not jailed for discussing the allegations of abuse or publishing anything about her children related to the case. She was jailed for discussing procedural aspects of her case and criticizing the Court. Such an order is clearly unconstitutional.

## THIRD CLAIM FOR RELIEF

(Eighth Amendment)

52. Paragraphs 1-51 are incorporated as though set forth fully herein.

53. The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court construed the last clause in this amendment as prohibiting "not only barbaric punishments, but also sentences that are disproportionate to the crime committed."

54. Proportionality review should be guided "by objective factors to the maximum possible extent"; the relative absence of objective factors to differentiate between sentences. *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

55. In *Solem*, the Court adopted an objective, two-step approach for undertaking a proportionality review. 463 U.S. at 290–91, 103 S.Ct. 3001. Step one includes two subparts: The trial court should consider (1) the gravity or seriousness of the offense and (2) the harshness of the penalty. *Id.* In step two, the trial court may compare the challenged sentence to sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. *Id.* at 291–92, 103 S.Ct. 3001. *Harmelin* clarified that this is not a wooden test requiring consideration of step two in every case. 501 U.S. at 1004, 111 S.Ct. 2680. Instead, step two's comparative analysis within and between jurisdictions is appropriate "only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005, 111 S.Ct. 2680. Viewed through the prism of *Harmelin*, then, the purpose of any comparative analysis of sentences in step two "is to validate an initial judgment" in step one "that a sentence is grossly disproportionate to a crime." *Id.*

56. Defendant's two consecutive six-month terms of incarceration are disproportionate to the crimes. These are the maximum sentences under the law. Neither sentence is for any direct action of the Petitioner. Both sentences are for the actions of third parties for which Petitioner did not request and does not control. Such a sentence is unconstitutional.

Exh. A-2

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue the writ to the Arapahoe County Sheriff to produce the Petitioner; and
2. Release Petitioner from custody.

Respectfully submitted this 9th day of May 2021.

By: *s/ Suzanne Taheri*

Suzanne Taheri

VERIFICATION

STATE OF COLORADO

COUNTY OF ARAPAHOE

Suzanne Taheri, on behalf of Petitioner, of lawful age, being first duly sworn upon oath, alleges and states that I have read the above and foregoing VERIFIED WRIT OF HABEAS CORPUS and that the statements and averments made on my behalf are true and correct.

Print name: Suzanne Taheri

Date: 5/9/2021

Exh. A-2