IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01558-NYW-KAS

K.A.,
Plaintiff

v.

MICHELLE BARNES, et al.,
Defendants.

**PLAINTIFF'S REPLY TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff K.A. hereby replies to County and State Defendants' motions to dismiss and addresses them together in this reply as all Defendants raised similar issues. The motion to dismiss should be denied for multiple reasons, including that Defendants: 1) misapply the *Rooker-Feldman* doctrine and the domestic relations exception; 2) are not exempted by Eleventh Amendment immunity, absolute immunity, or any failure to state a claim; 3) are liable because Plaintiff's complaint is based on policies, practices, and state law utilized and enforced by Defendants; and 4) have filed this Motion to Dismiss to avoid discovery which would unravel and reveal the details of the conspiracy claim asserted by K.A. Furthermore, Defendants misconstrue the relief Plaintiff is seeking and are incorrect in their Statute of Limitations claim.

## Overview

Plaintiff is not requesting this Court to "improperly intervene in a fully adjudicated state…proceeding" or asking this Court "to find various state court rulings violated her constitutional rights." ACDHS Motion to Dismiss, p. 2. Rather, Plaintiff is asking this Court to find unconstitutional the state law and county and state practices and policies that Defendant was subjected to. Key to a *Rooker-Feldman* bar is that Plaintiff asserts the state court final judgment was wrong. Rather, Plaintiff asserts that the state laws which allowed for the final judgment is unconstitutional. Plaintiff asserts that the policies, practices, and laws Defendants used and enforced violated her constitutional rights and led to the permanent termination of her parental rights. ACDHS Defendants' claim that Plaintiff's complaint is "groundless and frivolous" and the State Defendant's request that this be dismissed with prejudice is a desperate attempt by government agencies to avoid discovery that would break open an ongoing and dangerous conspiracy wielded against many single mothers – a conspiracy for which multiple members of the county government have been fired or moved around in the system to hide, further evidencing that ACDHS Defendants are aware of the violations (and that State Defendant is or should be) and that discrimination and the use of parental alienation has become a policy and practice that Defendants would rather conceal than acknowledge.

## Standard of Review

Plaintiff agrees that her Complaint must contain facts that, if assumed to be true, state a claim for relief plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). She has asserted sufficient facts and, "[a]t the motion-to-dismiss stage, we [the Court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the

light most favorable to the plaintiff." *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013) (internal quotation marks omitted).

## Plaintiff Has Alleged Facts Sufficient for Entity Liability

County Departments are responsible to investigate cases of suspected child abuse or neglect. C.R.S. § 19-3-308(4)(a). A County Department may also initiate a dependency and neglect case to remove a child from the parental home and permanently terminate parental custody. C.R.S. §19-3- 308(4)(b). Defendants did initiate such a case against K.A.

Plaintiff has alleged that an unconstitutional, discriminatory policy and practice is used by County and State Defendants and rooted in the state laws she challenges: the use of the parental alienation theory to remove parental rights from divorced parents. Moreover, state laws also allow the policy and practice of eliminating due process by employing an incredibly short appeal time: 21 days. Plaintiff's claim of conspiracy further alleges facts that County Defendants acted with deliberate indifference by allowing their employees to continually target divorced mothers, abuse and misuse the investigative and legal system, and engage in viewpoint discrimination. This behavior was so prevalent within ACDHS that Plaintiff alleges it was a practice of the Department. Plaintiff submits a sworn declaration from Kristin Nichols as Exhibit A, attesting to some of the practices at ACDHS that Plaintiff believes will be proven in the course of this matter. In the motion to dismiss, the facts should be construed in Plaintiff's favor and discovery should be allowed to further uncover the 1) policies and practices employed by Defendants and 2) deliberate indifference that are sufficient for entity liability.

## Director Barnes is Wrong to Deny Responsibility

Defendant Barnes is properly named as the official charged with the administration and enforcement of statutes and rules related to the Colorado Children's Code contained in C.R.S.

Title 19. Regulations promulgated by the Colorado Department of Human Services (of which Defendant Barnes is Executive Director) set forth the duties of the County Departments in conducting investigations of suspected abuse or neglect are codified in the Colorado Code of Regulations, 12 CCR 2509-7. Contrary to Defendant's motion, Plaintiff has brought numerous claims seeking to enjoin laws and policies administered by Defendant Barnes including those that discriminate based on marital status and race and those which denied her due process. *Complaint,* ¶¶ 112, 142. Plaintiff has alleged facts that both the state and county DHS utilize the debunked theory of parental alienation in connection with state laws to deprive divorced parents of their parental rights as a practice. This "policy or custom" is precisely what caused Plaintiff's injury. *Hafer v. Melo*, 502 U.S. 21, 361-62 (1991) (citation omitted). Defendants claim they are not responsible to enforce the statutes cited by Plaintiff, but Defendants are precisely the arms of government that rely on these statutes to remove the rights of parents, including K.A.

A claim for injunctive relief of an unconstitutional statute against state officials in their official capacities is an exception to the doctrine of sovereign immunity. *Ex parte Young,* 209 U.S. 123 (1908). This is properly directed against individuals who enforce such laws. *Kelly v. United States,* 69 F. 3d 1503, 1507 (10th Cir. 1995). Such injunctive relief can be granted with or without § 1983. Declaratory relief can also be granted against Director Barnes under 28 U.S.C. §§ 2201 and 2202. This relief is not the basis for jurisdiction – and Plaintiff has never claimed that it is – but it is a basis for relief with or without § 1983.

It is inaccurate for Director Barnes to assert that she has no responsibility to oversee her own agency and the county agencies that are enforcing and applying the state laws challenged by Plaintiff. County Defendants even assert that she is responsible for the policies and practices in county departments across the state. Plaintiff has alleged facts showing the State and County

Defendants both implement and enforce state law, policies, and practices that utilize the discriminatory policy of parental alienation, an overly short time for appeals that lacks due process, and a practice of viewpoint discrimination in parental termination cases like K.A.'s. Discovery in this case will highlight these policies and practices to a greater extent, but at this stage, the facts must be accepted as true and construed in Plaintiff's favor.

## **Defendants Misapply the Domestic Relations Exception**

The domestic relation exception was never intended to bar federal courts from reviewing state laws or the actions, policies, or practices of state or local governments for unconstitutionality, just because they may relate to domestic issues. *Obergefell v. Hodges* 576 U.S. 644 (2015) implicitly affirmed the ability of federal courts to hear federal questions when they relate to domestic relations issues. If the domestic relations exception were a bar to federal question jurisdiction, *Obergefell* would be illegitimate on this basis. Indeed, "[a]pplying the [domestic relations] exception to federal questions would violate the text, history, and structural logic of Article III" which intended for federal courts to decide constitutional questions, no matter the specific issue they relate to. *See* Bradley G. Silverman, *Federal Questions and the Domestic-Relations Exception*, 125 YALE L.J. 5 (2016).

While the U.S. Supreme Court has yet to make it crystal clear whether the domestic relations exception applies to federal question jurisdiction, even if this Court were to apply the less favorable standard in *Elk Grove Unified School District v. Newdow*, 542 U.S. 1 (2004), abrogated by *Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387-88 (2014), Plaintiff's case should not be dismissed. In *Newdow*, the Court agreed that claims related to domestic relations could be heard by federal courts, even if only in "rare instances," provided it was "necessary to answer a substantial federal question." *Newdow*, 542 U.S. at 13. Because

Plaintiff's claims relate to the confluence of multiple fundamental constitutional rights – as well as unconstitutional state laws – there are indeed substantial federal questions at issue.

In its motion to dismiss, ACDHS Defendants cite *Accord Alfaro v. Cty. Of Arapahoe*, 677 F. App'x 657, 660 (10th Cir. 2019), describing that the plaintiff there "specifically prays that each order in the [d]omestic [c]ase to date is scrutinized for its legal merits." ACDHS Mot. to Dismiss, p. 4-5. Here, Plaintiff does not request that this Court scrutinize each court order for its legal merits. Rather, Plaintiff requests that this Court scrutinize the behavior, policies, and practices of Defendants as well as the state laws at issue here.

The U.S. Supreme Court recognizes special constitutional safeguards when parental rights are terminated. In *Santosky v. Kramer*, 455 U.S. 745 (1982), the Court balanced the interests of the parent, child, and public, concluding that the Due Process Clause requires any allegation of parental unfitness to be proved by the "clear-and-convincing evidence standard" – a standard the Defendants here never met as they focused on discrimination against Plaintiff's viewpoint and the unconstitutional parental alienation policy allowed by state law. The *Santosky* Court evaluated the high constitutional stakes to any parent in losing their child permanently, showing that, indeed, federal courts have jurisdiction over the exact issues raised by Plaintiff.

It is well established that the right to raise and care for one's children is a constitutional right that federal courts may review and guard when states or local governments violate it. This is a constitutional case, not a domestic relations case and sits squarely within federal jurisdiction.

## Defendants Misapply the *Rooker-Feldman* Doctrine

It is true that state law and Defendants' policies and practices all led to the eventual termination of Plaintiff's parental rights by a state court. However, it is not the state court decision that Plaintiff challenges, but the law, policies, and practices that led to it. Naturally, if

Plaintiff is correct that the behavior, policies, practices, and law violated her constitutional rights, she will also be correct that her parental rights were unconstitutionally terminated and asks for this to be remedied in a way this Court sees fit. That conclusion is a natural byproduct of a determination fully within the federal judiciary's purview as a federal question, not as a review and scrutinization of a state court decision. Plaintiff asks for a restoration of her parental rights on the basis that the state laws underlying the state court decision are unconstitutional. "*Rooker-Feldman* does not bar a federal court claim merely because it seeks relief inconsistent with a state court judgment." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). ('If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.')" *Graff, et al. v. Aberdeen Enterprizes, II, et al.*, No. 21-5031 *22 (10th Cir. 2023).

Plaintiff is not arguing that the state court erred – which is an essential element for the *Rooker-Feldman* doctrine to apply – but that the state law allowing the decision was unconstitutional and that Defendants' actions, practices, and policies deprived her of her rights. She asks for remedies not based on a wrongful decision, but on unconstitutional acts of executive agencies which discriminated against her viewpoint and marital status in order to have her parental rights terminated. While a return of her parental rights would be inconsistent with the state court's decision, an inconsistent result is not barred. *See Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174-76 (10th Cir. 2018) (explaining *Rooker-Feldman* does not bar a federal claim "just because it could result in a judgment inconsistent with a state-court judgment").

*Rooker-Feldman* also does not immunize executive agency actions or bar claims that relate to an executive agency's discretionary actions or to the constitutionality of a state law –

both of which are at issue here. *See Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638 (8th Cir. 2022. In *Copeland*, the Tenth Circuit explained:

> *Brown* rejected an argument that claims challenging conditions of confinement in a civil-commitment facility were 'barred [under *Rooker-Feldman*] because the state court committed [the plaintiff] to [the facility's] supervision and ordered that he comply with [its] rules.' 677 F. App'x at 928. Although the plaintiff's claims would not have existed absent the civil-commitment order, which sent him to the commitment facility in the first place, such an order did not 'immunize] ... all actions taken in supervising [the plaintiff] from federal district court review.' *Id*.

Similarly, just because state court ordered the termination of K.A.'s parental rights and issued the gag order also at issue here, *Rooker-Feldman* does not bar her claims because the actions of Defendants in falsely provoking the termination and instigating the gag order are not immunized. Plaintiff's injuries were caused by a third party rather than the state court, as the Defendants enforced and discriminatorily applied the state laws at issue and practiced policies and actions that violated K.A.'s due process, First Amendment, and parental rights.

As to causation: "The *Rooker-Feldman* doctrine 'only applies when the injury alleged by the plaintiffs was 'caused by [the] state-court judgment[].' *Mo's Express*, 441 F.3d at 1237 (quoting *Exxon Mobil*, 544 U.S. at 284). To establish causation, 'an element of the [federal-court] claim must be that the state court wrongfully entered its judgment.' *Campbell*, 682 F.3d at 1283." *Copeland, et al., v. C.A.A.I.R., et al.*, No. 21-5024, *18 (10th Cir. 2023). Again, Plaintiff makes no wrongful judgment claim against the state court. While the state court order of termination is a "but for" cause, "but for" causes do not require the application of *Rooker-Feldman* when there is a separate, distinct cause and an independent claim. Here, state laws and Defendants' policies and practices are the actual independent cause of Plaintiff's injuries. *Rooker-Feldman* is inapplicable because "[i]f there is some other source of injury, such as a third

party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). Just as enforcement actions by Defendants – such as those in *Copeland* – are outside *Rooker-Feldman*, so, too, are executive agency actions prior to a court decision. *Rooker-Feldman* is not a pathway to immunity for executive agencies that want to avoid review of their unconstitutional laws, policies, and practices – which Plaintiff raises here. Moreover, Plaintiff is not a "state court loser," as the state court cases where not based on constitutional challenges as this case is.

The Tenth Circuit recently reiterated the Supreme Court's standard that *Rooker-Feldman* occupies "narrow ground." The Tenth Circuit and other appellate courts have consistently reversed lower courts for barring claims based on *Rooker-Feldman*, agreeing with the Supreme Court that "lower-court decisions constru[e] the doctrine 'to extend far beyond the contours of the *Rooker* and *Feldman* cases.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005). *See also Copeland et al., v. C.A.A.I.R. et al.*, No. 21-5024 (10th Cir. 2023).

Finally, "*Feldman…*held that the doctrine barred claims challenging the District of Columbia court's decisions themselves as arbitrary and capricious, **but not claims challenging the constitutionality of the rule underlying those decisions**. *See* 460 U.S. at 486-87." *Copeland.* \*16. (emphasis added). This is directly on point. Plaintiff's claims "challenging the constitutionality of the rule underlying" the state court decisions cannot be barred by *Rooker-Feldman*. "*Feldman* also held that the district court retained jurisdiction over claims asserting that the rule itself "is unconstitutional." *Id*. at 487." *Copeland*, \*15. The Third Circuit has also agreed that federal courts have jurisdiction "as long as the 'federal plaintiff present[s] some independent claim,' **even if that claim denies a legal conclusion reached by the state court**."

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (emphasis added).

## **The Statute of Limitations Does Not Bar Plaintiff's Claims**

The termination of K.A.'s parental rights was not final until September 7, 2021, when the Colorado Supreme Court denied certiorari on her petition to appeal the termination. She had also appealed her contempt order, after which she was unconstitutionally jailed, and her appeal was dismissed on June 18, 2021. Because both the termination of her parental rights and her unconstitutional jailing were caused by state laws and executive agency policies and practices that violated her constitutional rights, K.A. brought this § 1983 action on June 20, 2023. Defendants agree that both September 7 and June 18, 2021 were within the two-year statute of limitations that C.R.S. § 13-80-102 places on § 1983 claims coming out of Colorado. Therefore, Defendants are incorrect that Plaintiff's claims are barred under the statute of limitations.

Further, Plaintiff's saga with the Defendants and the state courts stretched over a time period that included a global pandemic. Federal courts have emphasized the importance of "giving plaintiffs' ample time to pursue [their] claims." *Fullen v. City of Salina,* No. 21-4010-JAR-TJJ, 14 (D. Kan. Sep. 30, 2021) (quoting *Bonilla v. City of New York*, No. 20-1704, 2020 WL 6637214, at *2 (E.D.N.Y. Nov. 12, 2020). Plaintiff should have her statute of limitations tolled if this Court finds that any claim is outside the two-year window, particularly since her complaint details how the global pandemic affected Plaintiff's access to attorneys and legal research while jailed. *Complaint,* ¶¶ 130-132.

In the alternative, if this Court finds that any claims are outside the two-year window, equitable tolling should be applied. Equitable tolling looks at whether Defendants' wrongful conduct prevented Plaintiff from making her claim in a timely manner or whether "truly

extraordinary circumstances" interfered with Plaintiff filing her claims despite diligent efforts. *Highline Village Associates v. Hersh Companies, Inc.*, 996 P.2d 250, 256 (Colo. App. 1999), as modified on denial of reh'g, (Dec. 23, 1999) and aff'd in part, rev'd on other grounds in part, 30 P.3d 221 (Colo. 2001). Plaintiff establishes in her complaint that Defendants purposely interfered with her ability to make claims throughout her extraordinary legal saga with them, as Defendants attempted to bar Plaintiff's attorneys and K.A. herself from accessing her own court records. Defendants pursued the termination of her parental rights even when they knew she was in the hospital and without legal representation. Defendants also attempted to prevent K.A. from obtaining legal representation as they continually threatened her attorneys – which resulted in at least one attorney resigning from K.A.'s case. This wrongful conduct, combined with the global pandemic in the middle of the set of actions leading to this complaint, implicate equitable tolling due to extraordinary circumstances and the wrongful conduct of Defendants.

Finally, there should be a presumption in favor of equitable tolling. In *Boechler, P.C. v. Commissioner of Internal Revenue*, 596 U.S. ___ (2022), a unanimous Supreme Court ruled that a federal statute of limitations is jurisdictional only if Congress clearly states that it is. If the statute of limitations is non-jurisdictional, the presumption is that it is subject to equitable tolling. C.R.S. § 13-80-102 – the state law that places a two-year statute of limitations on § 1983 actions does so broadly, not specifically. It places the limitation on any federal claims that do not have their own explicit limitation. Besides its breadth, the statute does not clearly state it is jurisdictional. Thus, the presumption should lead to equitable tolling here.

### Plaintiff's Claim of Conspiracy is Not Barred by Absolute Immunity

County Defendants incorrectly argue they are absolutely immune for testimony offered at any hearing. However, Defendants did not violate Plaintiff's constitutional rights only as a result

of testimony; they also falsified evidence and conspired with others to deprive Plaintiff of her constitutional rights to family relationships and free speech. Defendants put themselves in the position of investigators in making findings and conclusions about the veracity of claims made by K.A. and C.P. When acting in this capacity, absolute immunity does not shield a defendant's false sworn testimony. *Thomas v. Kaven*, 765 F.3d 1183, 1191 (10th Cir. 2014) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (additional citations omitted); *Complaint*, ECF No. 1, at ¶¶ 72 – 79. Defendants gathered all the information upon which they falsely testified before the government initiated any formal dependency proceedings. *Malik v. Arapahoe Cty. Dept. of Soc. Servs*, 191 F.3d 1306, 1314 (10th Cir. 1999) (applying absolute immunity requires a "functional approach" and a caseworker participating "in the investigative act of seeking a placement order . . . fall[s] outside the sphere of actions protected by absolute immunity"); *Complaint*, ECF No. 1, at ¶¶ 72 – 79. Because Defendants' actions were investigatory and include unconstitutional conduct besides false testimony, they are not absolutely immune.

### **Defendants' Claim of Eleventh Amendment Immunity Fails**

Qualified immunity does not apply where a government official (1) violates a constitutional right (2) that was clearly established at the time of the violation. *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014). As to the first prong, Plaintiff established that the Complaint plausibly alleges violations of her constitutional rights under the First, Fourth and Fourteenth Amendments, and these allegations must be construed in the light most favorable to her.

The second prong of qualified immunity does not require that "a court must already have outlawed similar conduct"; instead, "the test is satisfied if, viewed in the light of preexisting jurisprudence, the unlawfulness of the conduct is apparent." *Hatch v. Dep't for Children*, 274 F.3d 12 at 22 (1st Cir. 2001). The "critical inquiry" is "whether the dimensions of the right were

sufficiently well-defined that a reasonable officer would have understood that his actions violated that right." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Qualified immunity only applies when a public servant acts in good faith within the scope of their duties, which is an objective inquiry. *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 982 (10th Cir. 2017).

The rights here are clearly established. "The Supreme Court has long recognized family relationships as one of the liberties protected by the due process clause of the Fourteenth Amendment." *Spielman v. Hildebrand*, 873 F.2d 1377, 1383 (10th Cir. 1989). "[P]arents retain a vital interest in preventing the irretrievable destruction of their family life." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The allegations in the complaint with respect to County Defendants' false statements regarding K.A.'s parental visits are enough to satisfy the second prong.

Plaintiff has a right to be free from a social worker's deliberate falsification and intentional disregard of evidence. This is clearly established in both the Tenth Circuit and other circuit courts of appeal. Here, Plaintiffs allege that not only did County Defendants testify falsely in court, but they also intentionally ignored other documents and failed to submit critical evidence to the Court. All of the above constitute "outrageous . . . constitutional violations [which] ought not to shield [her] behavior behind qualified immunity[.]" *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). County Defendants documented and then testified that K.A. had not shown up for supervised visits for ten weeks, when the Department had, in fact, cancelled the visits. County Defendants could not "have labored under any misapprehension that the knowing or reckless falsification . . . of evidence was objectively reasonable.'" *Complaint,* ¶¶ 54, 55; *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004).

Government officials, including social workers and their supervisors, are not entitled to qualified immunity when plaintiffs have come forward indicating deliberate and willful conduct. *Snell v. Tunnell,* 920 F.2d 673, 697 (10th Cir. 1990). During the course of the investigation, County Defendants repeatedly refused to conduct forensic interviews of the children, even after multiple reports of abuse were made by outside parties. *Complaint,* ¶¶ 24-27; 34-37, 42-43. They falsely documented that K.A.'s mother hid K.A. in her trunk to see the children. *Complaint,* ¶ 119. Defendants demanded K.A. lie to her children as a condition of continued contact. *Complaint,* ¶ 118. During supervised visits with the children, County Defendants would put up impossible barriers between K.A. and the children. First, K.A. was told her visits would be cancelled if the children continued to be upset when she left. *Complaint,* ¶ 46. Then she was told an hour before a visit that she could not bring the meal she had made—instead requiring her to stop at three fast food restaurants to accommodate what they claimed was the children's new diet. ¶ 62 *Complaint,* ¶¶ Finally, she was told that she would have to lie to the children and tell them she had fabricated a cancer diagnosis and was not dying. *Complaint,* ¶ 48.

Throughout the investigation, County Defendants acted in concert with the GAL and C.P. in a single plan to separate K.A. from her children. To allege a conspiracy to violate § 1983, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "To demonstrate the existence of a conspiratorial agreement it simply must be shown *that there was a single plan*, the essential nature and general scope of which was *known to each person who is to be held responsible for its consequences*." *Id*. at 702 (emphasis added).

County Defendants, with C.P., repeatedly coordinated efforts to separate the children from K.A. In addition to refusing to investigate any exculpatory evidence, the children would

then be separated by the County and C.P. from anyone that reported the same. *Complaint, ¶ 38.* County Defendants and C.P. further colluded in the filing of contempt citations against K.A. for speaking about the case. Finally, the County Defendants and C.P. would attempt to interfere with K.A.'s defense by filing joint contempt citations against counsel, objecting to counsel's access to the record, and objecting to counsel sharing any record with K.A. *Complaint, ¶¶ 126-127.*

## Conclusion

It is disturbing that County Defendants would claim in their motion that K.A. is using this lawsuit to "smear father and publish records of the false abuse allegations against her daughters knowing that a party cannot be found liable for defamation based on the filing of legal pleadings." Plaintiff is not suing the father of her children. Rather, this case is squarely focused on the unconstitutional laws, policies, and practices of Defendants that deprived her of her rights. Defendants cannot be allowed to distract from their own reprehensible behavior, deliberate indifference, and pattern of discriminating against parents based on viewpoint and marital status. State Defendants must defend the state law they enforce as well as the policies and practices they oversee, and County Defendants must defend the practices and policies they employ that deprived Plaintiff of her constitutional rights.

WHEREFORE, Plaintiff respectfully requests this Court deny the motions to dismiss and allow this case to proceed.

Respectfully submitted on this 18th day of September, 2023.

/s/ Suzanne Taheri
**Suzanne Taheri**
West Law Group
6501 E. Belleview, Suite 375 Denver, CO 80111
Phone Number: (303) 263-0844
E-mail: st@westglp.com
*Attorney for Plaintiff*

/s/ Kristine L. Brown
**Kristine L. Brown**
8700 E. Jefferson Ave. #370953
Denver, CO 80237
Phone Number: (720) 285-9552
kristiburtonbrown@gmail.com
*Attorney for Plaintiff*