**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 23-cv-01558-NYW-KAS**

K. A.,

    Plaintiff,

v.

MICHELLE BARNES, Executive Director of Colorado Department of Human Services, in her official capacity, *et. al.*,

    Defendants.

---

**THE ACDHS DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

---

    Defendants Arapahoe County Department of Human Services ("ACDHS"), ACDHS Division Manager Michelle Dossey ("Ms. Dossey"), in her official capacity only, and the Arapahoe County Board of County Commissioners ("Board") (collectively, the "ACDHS Defendants"), through counsel, hereby submit this Reply in support of their Motion to Dismiss ("Motion") [Doc. #10] all claims asserted against them in Plaintiff K.A.'s Complaint ("Complaint") [Doc. #21] and to address the issues raised in Plaintiff's Response to the Motion ("Response") [Doc. #38]. In support, the ACDHS Defendants state as follows:

**Overview**

    In her Response, Plaintiff fails to respond to a number of the legal defenses raised in the Motion. Most notably, in the Eleventh Amendment immunity section of the Response, Plaintiff devotes three pages to arguing the standards of *qualified immunity* instead of Eleventh Amendment immunity, which are entirely different immunity concepts and are based on different immunity

tests. Resp., pp. 12-15.[1] As a result, Plaintiff fails entirely to address the ACDHS Defendants' assertion of Eleventh Amendment immunity or any of the voluminous cases from the District Court of Colorado or the Tenth Circuit uniformly holding county departments of human services to be arms of the state and entitled to Eleventh Amendment immunity. Therefore, all of Plaintiff's Section 1983 claims for money damages against the ACDHS or Ms. Dossey, in her official capacity, are barred. Plaintiff similarly concedes the Board is not a proper party by admitting the policies and practices she is challenging are state policies of the Colorado Department of Human Services ("CDHS") that are binding on the county human services departments and not the policies of the Board. *See* Resp., p. 4 ("Regulations promulgated by the Colorado Department of Human Services … set forth the duties of the County Departments in conducting investigations of suspected abuse or neglect…."). Thus, where Plaintiff fails to address the argument that the Board is not a proper party and concedes county departments of human services must follow the policies and practices of the CDHS, Plaintiff fails to state a claim against the Board. Plaintiff similarly fails to address the argument in the Motion that her claim against Ms. Dossey in her official capacity is redundant to the claim against ACDHS and, therefore, must be dismissed.

In addition to failing to address Eleventh Amendment immunity or whether the Board and Ms. Dossey are appropriate defendants, the arguments Plaintiff makes as to the application of the *Rooker-Feldman* doctrine, the domestic relations exception, and the statute of limitations are also unavailing. In order to attempt to escape the application of the *Rooker-Feldman* doctrine and the

---

[1] None of the Defendants in this matter have asserted qualified immunity and, in fact, none of the Defendants are entitled to qualified immunity since Plaintiff has only asserted official capacity claims. *See Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1263 (10th Cir. 2009) ("Qualified immunity, however, is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities.").

2

domestic relations exception, Plaintiff claims she has not asked this Court to intervene in the state case and has never claimed the state court incorrectly decided her case, rather she just seeks to challenge the constitutionality of various state laws. This argument, however, is belied by the allegations and relief sought in the Complaint, which unequivocally ask this Court to review the state court termination decision and issue orders reversing the termination of her parental rights. Similarly, Plaintiff argues her claims did not accrue until after all of her state court appellate rights were fully exhausted. This argument ignores the federal rules regarding accrual of claims, which accrue when Plaintiff became aware of her injuries, and which specifically do not require claims to be completed or perfected prior to the start of accrual. The failure of Plaintiff to cite any caselaw or even discuss the rules of accrual of claims when addressing the statute of limitations is telling. Accordingly, this Court should find that Plaintiff's claims are also barred by the application of the *Rooker-Feldman* doctrine, the domestic relations exception, and the statute of limitations.

Finally, Plaintiff's allegations as to her *Monell* claims against the ACDHS are based solely on what happened in her case, include no examples of other cases involving similar circumstances, and fail to identify any specific policies or practices of the ACDHS underlying her claims for relief. Accordingly, this Court should dismiss all of Plaintiff's claims against the ACDHS Defendants.

## Argument

I. **Plaintiff's claims for money damages against the ACDHS and Ms. Dossey are barred by Eleventh Amendment immunity**

Plaintiff fails to address the issue of Eleventh Amendment immunity or any of the numerous cases cited in the Motion granting Eleventh Amendment immunity to county departments of human services as arms of the state. Mtn., pp. 6-8. Instead, Plaintiff in the section of the Response entitled Eleventh Amendment immunity devotes three pages to arguing qualified

immunity, which is premised on an entirely different legal standard and is not a defense asserted here. Resp., pp. 12-15. Given that Plaintiff fails to address Eleventh Amendment immunity, this argument has been conceded and this Court should find the ACDHS and Ms. Dossey are entitled to Eleventh Amendment immunity as to all of Plaintiff's claims for monetary damages.[2]

## II.    The Board is not a proper party

As argued in the Motion, the Board is not a proper party for asserting claims based on the policies and practices of the ACDHS as the ACDHS is required to comply with the policies and practices of the CDHS. *See Doe v. Woodward*, No. 15-cv-01165-KLM, 2016 WL 11658659, at *16 (D. Colo. Sept. 30, 2016) ("Colorado law makes clear that the state board of human services and its executive director have the final authority to create and implement rules for the operation of the various county branches of the DHS, and thus are ultimately responsible for any policies implemented by the county branches."). Plaintiff concedes as much in her Response acknowledging the "[r]egulations promulgated by the Colorado Department of Human Services (of which Defendant Barnes is Executive Director) set forth the duties of the County Departments in conducting investigations of suspected abuse or neglect…". Resp., p. 4. Since Plaintiff fails to address in her Response the argument as to whether the Board is a proper party and concedes the ACDHS's policies are dictated by CDHS and not the Board, the Board is not a proper party for entity claims based on the policies of the ACDHS and the Board must, therefore, be dismissed.

## III.    Plaintiff's claims are barred by the domestic relations exception

Plaintiff argues the domestic relations exception should not apply to her claims because

---

[2] The official capacity claim asserted against Ms. Dossey must also be dismissed as redundant to the claims asserted against the entity where she is employed, the ACDHS. Plaintiff fails to address this argument either and it, too, has therefore been conceded.

she "does not request that this Court scrutinize each court order for its legal merits. Rather, Plaintiff requests that this Court scrutinize the behavior, policies, and practices of Defendants as well as the state laws at issue here." Resp., p. 6. This argument, however, ignores the relief sought in the Complaint. Specifically, Plaintiff, in her request for relief, asks this Court to "[r]everse the termination of Plaintiff's parental rights" or, in the alternative, "[o]rder a new hearing wherein Plaintiff may appeal the termination of her parental rights." Compl., p. 32. By requesting this Court to order a new termination hearing or reverse the termination, Plaintiff has not limited her claims, as she now contends, to evaluating the constitutionality of a state statute, but rather seeks to have the federal court intervene and issue new orders in her state dependency action. Such requests necessarily would require this Court to scrutinize the merits of the state court termination order. Accordingly, Plaintiff's claims are barred by the domestic relations exception. *See Alfaro v. Cty. of Arapahoe*, 766 F. App'x 657, 660 (10th Cir. 2019) (holding a request to review and scrutinize state domestic orders is barred by the domestic-relations exception).[3]

## IV.    Plaintiff's claims are barred by the *Rooker-Feldman* doctrine

Likewise, Plaintiff seeks to escape the application of the *Rooker-Feldman* doctrine by claiming she is not challenging the state court decision, but "the law, policies, and practices that led to it." Resp., p. 6. This claim again is belied by Plaintiff's Complaint where she asks the federal court to review and reverse her termination and to find the gag order issued by the District Court and the related contempt holdings to have been unconstitutional. Such requests for relief would

---

[3] Even the *Newdow* decision relied upon by Plaintiff, ultimately held "in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 13 (2004); *see also id.* at 17 ("When hard questions of domestic relations are sure to affect the outcome, the prudent course is for the federal court to stay its hand rather than reach out to resolve a weighty question of federal constitutional law.").

place this Court in the role of an appellate court reviewing the propriety of state court orders, which is exactly what the *Rooker-Feldman* doctrine was designed to prevent. The Tenth Circuit in *Alfaro* rejected plaintiff's attempt to make a similar distinction and found *Rooker-Feldman* barred attempts to review the propriety of state court orders, even orders alleged to be unconstitutional.

> Further, Alfaro's suggestion that federal jurisdiction exists because the state court issued void, unconstitutional, and unenforceable orders is unavailing. Federal courts do not have jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Indeed, as the district court concluded, reviewing the merits of final state-court orders is precisely the type of claim encompassed by the *Rooker-Feldman* doctrine.

*Alfaro*, 766 F. App'x at 660-61 (citations and internal quotations omitted). "A federal district court does not have the authority to review final judgments of a state court in judicial proceedings," and, as a result, where Plaintiff explicitly asks this Court to reverse the termination order and/or order a new parental termination hearing, Plaintiff's claims are barred by *Rooker-Feldman*. *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 (10th Cir. 1986).

Plaintiff further argues this court has jurisdiction over her case because parental unfitness must be proved by a clear and convincing standard, which is a standard the Defendants allegedly failed to met at the termination hearing. Resp., p. 6. The fact Plaintiff is asking this Court to review the state court proceedings to determine whether the Defendants submitted sufficient evidence to meet the clear and convincing standard for proving Plaintiff to be an unfit parent is yet another example of Plaintiff conceding the crux of her claims is a direct challenge of the state court orders, requiring this Court to act as an appellate court in reviewing both the propriety of the orders and the sufficiency of the evidence, all of which is directly prohibited by *Rooker-Feldman*.

Plaintiff directs this Court to the Tenth Circuit decision in *Mayotte v. U.S. Bank Nat'l Ass'n*,

6

880 F.3d 1169, 1174-76 (10th Cir. 2018) for the proposition that *Rooker-Feldman* "does not bar a federal claim just because it could result in a judgment inconsistent with a state-court judgment." Resp., p. 7. Plaintiff, however, ignores that the Tenth Circuit in *Mayotte* specifically held "the federal-court suit before us is not barred by the *Rooker-Feldman* doctrine because none of the claims … challenge the Rule 120 proceedings or seek to set aside the Rule 120 ruling." *Mayotte*, 880 F.3d at 1171. Thus, *Mayotte* is easily distinguishable and actually supports the lack of jurisdiction in this case where Plaintiff explicitly requests the court to reverse the termination and challenges the underlying state court proceedings. *Id*. at 1174 ("What is prohibited under *Rooker-Feldman* is a federal action that tries to *modify* or *set aside* a state-court judgment….") (emphases in original). Here, where Plaintiff explicitly claims the source of her injury to have been the termination of her parental rights by the state court and the issuance of "unconstitutional" gag orders and subsequent contempt orders by the state court and asks this Court to reverse the state court orders, Plaintiff's claims are barred by *Rooker-Feldman* and this court lacks jurisdiction to adjudicate her claims.[4]

## V. Plaintiff's claims are barred by the statute of limitations

Plaintiff argues the statute of limitations had not expired because the termination of her parental rights was not final until the Colorado Supreme Court denied her petition for certiorari on September 7, 2021 and her appeal of her contempt order was not final until June 18, 2021. This contention, however, directly contradicts the arguments she made in response to the *Rooker-*

---

[4] Another example of Plaintiff improperly seeking to have this Court review the state's court decisions is found in her Request for Relief where she asks this Court to "[g]rant Plaintiff damages for being unconstitutionally jailed." Compl., p. 32. Not only would such relief require this Court to review the merits of the state court's contempt orders, but also is not cognizable where Plaintiff's contempt convictions have never been overturned.

*Feldman* and domestic relations exception defenses that she is not challenging the court orders only the actions of the ACDHS Defendants. Plaintiff admits being aware of the actions of the ACDHS defendants well before her state appellate cases were decided. In fact, she fails to identify any action of any employee of the ACDHS which occurred later than May 2021, while her Complaint was not filed until June 20, 2023, after the two-year statute of limitations had expired.

The question under federal law, which is never addressed in the Response, is when Plaintiff's claims accrued. A claim accrues when the "plaintiff knows or has reason to know of the injury which is the basis of the action." *Nicholas v. Boyd*, 317 F. App'x 773, 778 (10th Cir. 2009) (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998)). "A plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations. Nor must a plaintiff know all of the evidence ultimately relied on for the cause of action to accrue." *Id*. (citations and internal quotations omitted). Here, Plaintiff filed a previous state habeas appeal (**Ex. A-2** to the Motion [Doc. #28]) where she raised these same constitutional claims in May of 2021, showing unequivocally Plaintiff knew of the basis for this action more than two years prior to filing her Complaint in June 2023. Accordingly, because Plaintiff's claims (including her purported constitutional challenges to various state statutes) expired well before she filed this lawsuit, all of her claims are therefore barred by the statute of limitations.

Plaintiff also argues if the Court finds her claims are time-barred the Court should apply the doctrine of equitable tolling to allow her to assert her claims. Resp., p. 10. As a basis for equitable tolling, Plaintiff claims Defendants restricted her access to her court records and caused one of her attorneys to withdraw. Resp., p. 11. The problem with this argument is that counsel for Plaintiff in this matter, Ms. Taheri, was also counsel for Plaintiff in the underlying state

8

dependency case and Ms. Taheri filed the Habeas petition [Doc. #28] raising Plaintiff's constitutional claims in May 2021, so both Ms. Taheri and Plaintiff had access to her records and knowledge of these claims more than two years before this lawsuit was filed undercutting any basis for equitable tolling. Thus, Plaintiff has failed to provide the court with viable grounds for extending her statute of limitations and this Court should find her claims are all time barred.

### VI. Plaintiff has not alleged sufficient factual allegations to state a *Monell* against the ACDHS Defendants

In support of her *Monell* claim, plaintiff argues she has alleged the use of an unconstitutional, discriminatory policy—the use of parent alienation theory to remove parental rights from divorced parents. Resp., p. 3. Plaintiff, however, fails to identify any specific policy of the CDHS or ACDHS that endorses or encourages the use of parent alienation theory, nor does Plaintiff identify in her Complaint a single other case in which parent alienation theory has been used or divorced mothers have been allegedly targeted by the ACDHS. Instead, Plaintiff relies solely on what allegedly occurred in her case as the basis for her *Monell* claim.[5] A single isolated incident, however, is insufficient to state a *Monell* claim or to demonstrate the agency was aware of and deliberately failed to address an alleged inadequate policy. *See Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) ("[P]roof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability."); *Lopez v. City of Tulsa*, No. 09-CV-757-TCK-FHM, 2010 WL 3825395, at *5 (N.D. Okla. Sept. 27, 2010) (dismissing Section 1983 official capacity

---

[5] Plaintiff attaches a declaration to her Response. Not only is the declaration a document that cannot be properly considered in deciding the Motion because it includes information outside the four corners of the Complaint, it does not include any information about the use of parent alienation theory in other cases, which is the one policy identified in the Response that allegedly serves as the basis for the *Monell* claim.

claim that sought to impose municipal liability for single, isolated incident). Plaintiff similarly includes conclusory statements in the Response that the ACDHS targeted divorced mothers without directing the court to any factual allegations in the Complaint explaining when and how this "targeting occurred." *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (citations and internal quotations omitted). Finally, Plaintiff argues she has stated a viable *Monell* claim against the ACDHS Defendants based on the Colorado Supreme Court rules establishing a 21-day expedited time for filing appeals of dependency and neglect cases. Resp., pg. 3. The Colorado Supreme Court's appellate rules are not policies, practices or customs of the ACDHS and, thus, cannot serve as the basis for a Section 1983 claim against the ACDHS Defendants.[6] Accordingly, Plaintiff fails to direct the Court to factual allegations in her Complaint to demonstrate a viable basis for asserting a *Monell* claim against the ACDHS Defendants.

WHEREFORE, the ACDHS Defendants respectfully request this Court dismiss all claims asserted against them.

---

[6] Colo. App. R. 3.4, which establishes an expedited 21-day period for filing appeals in dependency and neglect cases, specifically includes a provision giving the appellate court discretion to extend the 21-day period for good cause shown. *See* Colo. App. R. 3.4(b)(3). Here, where Plaintiff argues the state appellate courts violated her due process by failing to grant her an extension of the 21-day time limit to appeal is yet another example of the Plaintiff seeking to use this case to relitigate her state court proceedings. Compl. at ¶175 and Request for Relief, ¶4 ("Strike the unconstitutional … 21-day, no exception limit to appeal a permanent termination in Colo. R. App. 3.4").

Submitted this 26th day of September, 2023.

**Arapahoe County Attorney's Office**

By: *s/ Writer Mott*
Writer Mott
Deputy County Attorney
Rebecca M. Taylor
Senior Assistant County Attorney
5334 S. Prince Street
Littleton, CO 80120-1136
Tele: 303-795-4639
E-mail: Wmott@arapahoegov.com
E-mail: Rtaylor@arapahoegov.com

*Attorney for Defendants Arapahoe County Department of Human Services, Michelle Dossey, and the Arapahoe County Board of County Commissioners*

**Certificate of Service**

       This is to certify that on the 26th day of September, 2023, I electronically filed the foregoing **THE ACDHS DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

Suzanne Taheri
st@westglp.com

Kristine L. Brown
kristiburtonbrown@gmail.com

Aaron Pratt
aaron.pratt@coag.gov

Jennifer Carty
jennifer.carty@coag.gov

Allison Ailer
allison.ailer@coag.gov

                                                  *s/ Stacy Hines*
                                                  Stacy Hines, Paralegal
                                                  Arapahoe County Attorney's Office