- My name is Robin Niceta.
- I was previously employed as a child protective service caseworker with Arapahoe County. I worked there five years left in April 2022.
- During this time, I worked with Marika Quinn on the SART team. This is the team that handled all sexual abuse/trafficking cases that would come from intake to permanency. I was aware of the case involving K.A. through weekly team meetings and other communications.
- I often worked with Guardian Ad Litem's ("GALs") Sarah Yarbrough and Alison Bettenberg. I was also socially acquainted with both. They would take certain caseworkers to lavish dinners at Shanahan's, throw parties at their office and only invite the caseworkers that they felt were aligned in their views of how the child welfare system should operate.
- Sarah and Allison were motivated to keep cases open longer as this would generate more money for the firm.
- Marika and Sarah were close friends. Marika only wanted to work with Sarah because they could make the cases go the way they felt, even if the parents were truly making progress on their treatment plans.  It was well known that the system was set up to assign certain GAL's at specific dates and times so get a preferred GAL.
- Sarah would brag that she was untouchable and laughed off complaints filed against her at the Office of Child Representatives, who govern GAL's.
- I believe when K.A.'s case was assigned to Marika the outcome was predetermined. Marika would refer to C.P. as "dreamy" and K.A. as "batshit crazy". Marika's job was to be neutral and to help K.A. understand the concerns and help her navigate the hardships associated with having an open case while also going through a divorce.  I never saw any attempts by Marika other than going through the motions. There was no real investigation and I don't believe Marika or Sarah ever substantively met with K.A.
- When the County Attorney's, GAL's, and CW's want to have communication that isn't discoverable, they use their personal phones.  Kristi Erickson utilized this a lot and Marika and Sarah always communicated via their personal phones.  We are taught that this is an acceptable practice. Even during court hearings, this texting was going on.
- Janie Prewitt, our supervisor would have us go back in and alter notes if she felt like they needed more or if the notes didn't match the direction the case was headed.  This was a very regular practice.
- For example, in K.A.'s case there is an entry from Sunday, June 30, 2019 showing an in person team meeting at the Department office. The subject was a sexual abuse outcry against the father that was made on videotape at the Department by one of K.A.'s daughter and a referral was made. The outcry was not accepted for assessment. The meeting notes show I was in attendance. This is false, I was not in attendance at this meeting.

1

- Barbara Shindell was Sarah's go to for expert testimony and evaluations for cases that they want to allege coaching. I found her work to be superficial and that she really just reports from what she read in school decades ago. Barbara carries a lot of weight in Arapahoe County because of her ties to Sarah and Sarah's advocacy. Barbara's views on the parents is heavily weighed by what the GAL tells her to put in the repor.

- On September 18th 2020, Sarah sent me a text message from a contempt hearing with K.A. She complained her brain hurt from listening to "stupidness". Tamara White from the County Attorney's office was also on this text message.
- Judge Natalie Chase would host happy hours to meet with caseworkers and GAL's.  The County leadership would push us to attend these. Judge Chase would discuss cases with caseworkers outside the court proceedings. Caseworkers preferred being in front of Chase because the cases would go their way. The County Attorney's office was aware of this practice. On February 21, 202 Tamara White sent me a text message acknowledging she knew I had been in Chase's chambers.

- All in all, it was making the proceeding unprofessional. Chase once stopped a hearing, went off the record and had us all vent our frustrations to each other (all in front of the parents). A complaint was filed about this hearing and she then had all the county workers go back into her chambers individually so that we could express how that hearing and her conduct made us feel. It made me very uncomfortable and I just said "it's cool" and asked if I could leave because she was about to preside over a hearing I was testifying in that same day.

- Chase then she showed up at a training that the County put on for caseworkers, service providers, and GAL's and had me discuss my case to the entire group even though that case was still pending.

- I don't believe this behavior stopped with Chase though.  For example, Sarah's wedding was officiated by Judge Slade who had cases on her docket that Sarah was the GAL on.  They commonly talked socialized and discussed their personal lives.  This was all commonplace in the Courthouse and set up an adversarial "us v. them" atmosphere.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 27, 2023.

2