IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-01558-NYW-KAS

K.A.,

    Plaintiff,

v.

MICHELLE BARNES, in her official capacity,
ARAPAHOE COUNTY DEPARTMENT OF HUMAN SERVICES, DIVISION OF CHILD AND ADULT PROTECTION SERVICES,
MICHELLE DOSSEY, in her official capacity, and
ARAPAHOE COUNTY BOARD OF COMMISSIONERS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the ACDHS Defendants' Motion to Dismiss ("ACDHS Motion to Dismiss" or "ACDHS Motion"), [Doc. 10, filed July 17, 2023], filed by Defendants Michelle Dossey ("Defendant Dossey" or "Ms. Dossey"), the Arapahoe County Board of County Commissioners (the "Board"), and the Arapahoe County Department of Human Services (the "Department") (together, "ACDHS Defendants"); and the Corrected Barnes' Motion to Dismiss ("Barnes Motion to Dismiss" or "Barnes Motion"), [Doc. 37, filed August 28, 2023], filed by Defendant Michelle Barnes ("Defendant Barnes" or "Ms. Barnes"). Plaintiff K.A.[1] ("Plaintiff" or "K.A.") has filed a joint response ("Response"), [Doc. 38], and Defendants have replied, [Doc. 43; Doc. 44]. The Court finds that oral argument will not materially assist in the disposition of these motions. Upon

---

[1] Plaintiff proceeds under her initials in this action.  See [Doc. 15].

review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **GRANTS** both the ACDHS Motion to Dismiss and the Barnes Motion to Dismiss.  This action is **DISMISSED without prejudice**.

## BACKGROUND

The Court takes the following allegations from the redacted Complaint ("Complaint"), [Doc. 21, filed July 31, 2023], as true for the purposes of this Order.[2]  In May 2016, Plaintiff and her then-husband C.P. jointly filed for divorce, agreeing to evenly divide custody over their three daughters, then aged three, six, and nine.  [*Id.* at ¶¶ 11–12].  In June 2017, the youngest daughter's therapist reported sexual abuse by C.P., but the Department found the allegation inconclusive.  [*Id.* at ¶ 13].  In July 2017, the middle daughter made a similar accusation, and the Department substantiated this allegation.  [*Id.* at ¶ 14].  The Department initiated a dependency and neglect action in which it alleged both that C.P. sexually abused the two younger children and that K.A. emotionally abused and coached the children.  [*Id.* at ¶ 15].  Department caseworker Marika Quinn ("Ms. Quinn") served the dependency and neglect petition on K.A. on September 13, 2017, representing to K.A. that the children would be placed in foster care unless K.A. left her residence so the children could remain with K.A.'s mother.  [*Id.* at ¶¶ 16–17].  A jury found neither parent culpable and the state court ordered a custody evaluation.  [*Id.* at ¶¶ 18–19].  In March 2018, Plaintiff and C.P. finalized their divorce, in which each had equal custody of the children.  [*Id.* at ¶ 23].

---

[2] Defendants bring only facial attacks on this Court's subject-matter jurisdiction.  *See* [Doc. 10 at 3; Doc. 37 at 3]; *see also E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001) ("In addressing a facial attack, the district court must accept the allegations in the complaint as true.").

In December 2018, the eldest daughter's therapist reported sexual abuse by C.P. to the Department. [*Id.* at ¶ 24]. However, the children continued supervised visitation with C.P. and the Department closed its investigation, without conducting any forensic interviews, on February 6, 2019. [*Id.* at ¶¶ 25–26]. Department personnel then completed a "surreptitious interview" at the children's school the next week. [*Id.* at ¶ 27]. On February 22, 2019, the Department brought another dependency and neglect action against K.A. for emotional abuse and coaching. [*Id.* at ¶ 28]. C.P. temporarily received full custody of the children while K.A. was permitted two hours of supervised and videotaped visitation per week. [*Id.* at ¶¶ 29–30]. This time, a jury found against K.A. [*Id.* at ¶ 31].

K.A. continued limited supervised visitation with the children under a treatment plan, although at one point her visits were suspended for several months. [*Id.* at ¶¶ 32–33]. When a visit between Plaintiff and her children concluded, the children would be "visibly upset" by being separated from their mother. [*Id.* at ¶ 45]. In July 2019, Plaintiff was told that if this pattern continued, the visits with her children would be canceled as abusive. [*Id.* at ¶ 46]. The stress from that ultimatum caused K.A.'s low-grade cancerous skin condition to flare up, which led to an additional threat of canceled visitation based on K.A. allegedly lying about having cancer. [*Id.* at ¶¶ 47–48].

Meanwhile, K.A.'s children "continued to make outcries of sexual abuse against C.P. on videotape," but the Department and guardian ad litem Sarah Yarbrough ("Ms. Yarbrough") refused to investigate. [*Id.* at ¶ 32]. For example, on April 17, 2019, during a supervised visit, the youngest daughter alleged sexual abuse by C.P.; the Department, through Ms. Quinn, failed to conduct forensic interviews with the children, closed the

3

referral within an hour, and sent the children home with C.P. [*Id.* at ¶¶ 34–35]. The Department received additional referrals of sexual abuse by C.P. from both the eldest daughter's teacher and the children's dance instructor. [*Id.* at ¶¶ 36–37]. C.P., the Department, and Ms. Yarbrough then pulled the children out of their dance recital while falsely suggesting that it was the dance studio's decision. [*Id.* at ¶¶ 38–39].

Plaintiff alleges that the Department, Ms. Yarbrough, C.P.'s attorney, and the state judge assigned to the case, Judge Natalie Chase ("Judge Chase") "collu[ded]" against her between 2019 and 2021. [*Id.* at ¶ 60]; *see also* [*id.* at ¶¶ 103–04 (alleging that the Department, C.P., and Ms. Yarbrough "conspired to use the system to deprive K.A. of her constitutional rights," including by preparing court filings together)]. On August 22, 2019, following a hearing, Judge Chase ordered the children removed from their longtime school and dance studio. [*Id.* at ¶¶ 49–50]. She also allegedly instructed Plaintiff to lie about her skin condition. [*Id.* at ¶ 52]. Allegedly without evidence, the Department stated that Plaintiff had mental health issues, and Plaintiff's supposed mental health issues were material to Judge Chase's decision. [*Id.* at ¶ 59]. The Department canceled K.A.'s visits the next week and later blamed K.A. for missing the canceled visits. [*Id.* at ¶¶ 51, 54–55].

K.A. sought to have her visitation rights reinstated, and Judge Chase held another hearing. [*Id.* at ¶ 53]. Ultimately, K.A. was permitted weekly one-hour visits with her children, although issues continued to arise. [*Id.* at ¶ 58]. An hour before a dinner visit in early 2020, the Department advised Plaintiff that "her children had new eating habits," so Plaintiff could not bring the meal she prepared and would instead need to get fast food from three different restaurants. [*Id.* at ¶ 61]. When K.A. learned from the Department in February 2020 that C.P. wanted to vaccinate the children, which went against the divorce

4

agreement, a hearing was set and then vacated.  [*Id.* at ¶ 62].

In April 2020, Plaintiff "put a petition online advocating for protection of her children."  [*Id.* at ¶ 63].  The next month, the Department moved to terminate K.A.'s parental rights and filed a protective order.  [*Id.*].  The Department also filed a contempt citation in connection with Plaintiff's online petition, and Plaintiff was ordered to remove the petition and stop posting information online related to her children and their alleged abuse or neglect.  [*Id.* at ¶ 64].  K.A. removed the online petition shortly thereafter.  [*Id.*].

In August 2020, a state court sentenced K.A. to five months in custody for posting the online petition in violation of a defamation settlement between her and C.P.; meanwhile, the Department continued to prosecute its own contempt charge arising out of the same conduct.  [*Id.* at ¶ 66]; *see also* [*id.* at ¶ 22].  On August 25, 2020, K.A. appeared at her parental rights termination hearing before Judge Chase, which was combined with the second contempt proceeding.  [*Id.* at ¶ 67].  As K.A.'s prior counsel had withdrawn over her objection in June 2020, she proceeded pro se at the hearing.  [*Id.* at ¶¶ 65, 67].  That night, Plaintiff was hospitalized.  [*Id.* at ¶ 68].  The following day, an individual identified as an "ADA advocate" advised the court of K.A.'s hospitalization, but the hearing nonetheless proceeded and the state court terminated K.A.'s parental rights without K.A. present, finding that she engaged in "parental alienation."  [*Id.* at ¶¶ 69–70].[3]  Judge Chase also found K.A. in contempt under the May 2020 protective order for posting the online petition.  [*Id.* at ¶ 72].  The court then sealed the case records, "stating that no

---

[3] Plaintiff alleges that "[p]arental alienation is a mental health theory that has been heavily discredited by major mental health associations worldwide, but also used by social services departments to remove parents—mothers specifically—from the lives of their children."  [Doc. 21 at ¶ 71].

5

party was to release any filing in the case to any third party or ask other people to post anything on the internet regarding the case." [*Id.* at ¶ 73]. On August 31, 2020, K.A.'s initial five-month sentence for contempt commenced. [*Id.* at ¶ 74].

C.P. then allegedly filed a civil motion for a "protection order" indicating that K.A. was a "physical threat" because she emotionally abused the children and failed to attend the second day of the August 2020 termination and contempt proceeding. [*Id.* at ¶ 76]. New counsel appeared for K.A. and the court entered a permanent civil protection order on September 23, 2020, that barred K.A. from speaking with any third party about the case other than counsel, and further prohibited the attorneys involving from sharing the court records with K.A. [*Id.* at ¶¶ 77–79]. K.A. sought reconsideration and Judge Chase found K.A. "incredible as a matter of law." [*Id.* at ¶ 80].

At the September 23, 2020, hearing, Judge Chase indicated to C.P. that she expected another contempt citation to be forthcoming. [*Id.*]. C.P. filed his next contempt charge on October 1, 2020, based on an online posting by a California group which later told the state court that K.A. had no knowledge of the posting. [*Id.* at ¶ 81]. On November 6, 2020, K.A. received two separate consecutive six-month sentences for contempt, in addition to the sentence she was already serving. [*Id.* at ¶¶ 86–87]. The next day, a $1.76 million default judgment was entered against K.A. in a second defamation case filed by C.P., which K.A. and her counsel never received notice of. [*Id.* at ¶ 85]. K.A. unsuccessfully attempted to set aside this default judgment in mid-2021. [*Id.* at ¶ 94].

Judge Chase verbally modified the September 2020 protective order in December 2020, although the new order was not served on K.A. [*Id.* at ¶¶ 88–89]. On December 28, 2020, the Colorado Springs Gazette published an editorial titled "A sick mom, alone

6

in a cell, on Christmas Eve." [*Id.* at ¶ 90]. C.P. moved for additional sanctions and, on March 12, 2021, after hearing recorded phone conversations in which K.A. spoke with a friend about her legal representation, Judge Chase issued another six-month sentence for contempt. [*Id.* at ¶¶ 91, 93, 95]. Subsequently, the Department, C.P., and Ms. Yarbrough jointly sought the entry of contempt sanctions against K.A.'s new counsel. [*Id.* at ¶ 99].

On May 10, 2021, K.A. filed a petition for a writ of habeas corpus in state court raising First, Eighth, and Fourteenth Amendment issues. [*Id.* at ¶ 98]. On June 4, 2021, the Colorado Court of Appeals accepted Plaintiff's untimely appeal of the termination of her parental rights, which should have been filed within 21 days of the termination decree under the applicable rules. [*Id.* at ¶¶ 101–02]. Two weeks later, on June 18, 2021, the Colorado Court of Appeals vacated the prior order and dismissed K.A.'s appeal. [*Id.* at ¶ 105]. Plaintiff sought review, and the Colorado Supreme Court denied certiorari on September 7, 2021. [*Id.*]. K.A. also appealed the fourth contempt order in April 2021, and the Colorado Court of Appeals ultimately affirmed the sanctions based on Plaintiff's failure to challenge the underlying order under the collateral bar rule. [*Id.* at ¶¶ 97, 108]. The Colorado Supreme Court denied certiorari with respect to that issue on January 7, 2023, although the underlying contempt sentence was reconsidered by a new judicial officer on March 1, 2023, and replaced with home confinement. [*Id.* at ¶¶ 109–110].

Plaintiff filed this action on June 20, 2023. [Doc. 1]. Defendants Barnes and Dossey are sued in their respective official capacities.[4] [*Id.* at 1]. Against all Defendants,

---

[4] Suits against state or county officials in their official capacities are treated as suits against the state or county, respectively. See *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). However, because county departments of human services are arms of the state in Colorado, both official-capacity

K.A. brings claims under 42 U.S.C. § 1983 for violation of her procedural due process rights ("Count I"), her substantive due process rights ("Count II"), and her equal protection rights ("Count III"). [Doc. 21 at ¶¶ 112–83]. Against only ACDHS Defendants, the Complaint includes a § 1983 claim under the First Amendment related to the gag order and Plaintiff's compelled speech ("Count IV"), another § 1983 claim under the First Amendment based on viewpoint discrimination ("Count V"), and a claim for civil rights conspiracy under 42 U.S.C. § 1985 ("Count VI"). [*Id.* at ¶¶ 184–216]. Plaintiff seeks a range of relief, including (1) an order reversing the termination of her parental rights or requiring a new appealable hearing on the matter; (2) a declaratory judgment that Colorado's 21-day period to appeal the termination of parental rights is unconstitutional; (3) an order that "[s]trike[s]" both Colorado's 21-day period to appeal the termination of parental rights and a Colorado statute limiting Plaintiff's ability to seek reinstatement of her parental rights; (4) a declaratory judgment that Defendants cannot "engage in viewpoint discrimination against parents who do not vaccinate their children or who follow particular dietary plans"; (5) a declaratory judgment that terminating parental rights based on parental alienation violates equal protection because it discriminates against parents on the basis of marital status; (6) a declaratory judgment that certain provisions of the federal Indian Child Welfare Act "should apply to families of all races"; and (7) damages for K.A.'s allegedly unconstitutional incarceration. [*Id.* at 32]. Defendants have moved to dismiss the case, raising a host of jurisdictional and non-jurisdictional arguments. [Doc. 10; Doc. 37]. The motions are now ripe for decision.

---

claims here are ultimately against the State of Colorado. *See Dahn v. Adoption All.*, No. 13-cv-02504-RM-CBS, 2014 WL 12496539, at *3 (D. Colo. Aug. 28, 2014).

**LEGAL STANDARDS**

I.  **Rule 12(b)(1)**

Federal courts are ones of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (quotation omitted).

Jurisdiction encompasses standing. "The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (cleaned up). Article III standing, or constitutional standing, is a jurisdictional prerequisite to suit and requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560–61 (1992) (alterations in original)).  "The party invoking federal jurisdiction bears the burden of establishing" standing.  *Lujan*, 504 U.S. at 561.  Meanwhile, the prudential standing doctrine is comprised of "judicially self-imposed limits on the exercise of federal jurisdiction that are founded in concern about the proper—and properly limited—role of the courts in a democratic society."  *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (quotation omitted).  This doctrine encompasses various limitations on the exercise of jurisdiction, including the general prohibition against a litigant asserting another person's legal rights.  *Wilderness Soc'y*, 632 F.3d at 1168.  But, unlike constitutional standing, "prudential standing is not a jurisdictional limitation and may be waived."  *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (quotation omitted).

## II.     Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted).  The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"

(quotation omitted)). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

In the ACDHS Motion to Dismiss, ACDHS Defendants argue that Plaintiff's claims for relief are barred by (1) the domestic-relations exception to federal jurisdiction, (2) the *Rooker-Feldman*[5] doctrine, (3) Eleventh Amendment immunity, (4) a two-year statute of limitations, (5) absolute immunity, and (6) Plaintiff's failure to sufficiently allege municipal liability. [Doc. 10]. ACDHS Defendants also contend that suing Ms. Dossey is redundant, suing the Board is improper, and that they are not the right defendants for the declaratory relief requested. [*Id.*]. Defendant Barnes joins in most of these arguments, and further contests (1) the traceability and redressability prongs of Plaintiff's Article III standing, (2) Plaintiff's failure to allege Ms. Barnes's participation, and (3) the applicability of § 1983. [Doc. 37].

### I. Barnes Motion to Dismiss

The Court begins with the Barnes Motion to Dismiss. Defendant Barnes seeks dismissal on the ground that Plaintiff lacks standing to sue, which is a constitutional prerequisite, because K.A. "cannot demonstrate that her alleged injuries—bankruptcy, incarceration, and termination of her parental rights—are fairly traceable to Director Barnes/the State Department's conduct or that her alleged injuries are likely to be

---

[5] *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

11

redressed by a favorable judicial decision." *See* [*id.* at 4]. Plaintiff's Response does not appear to rebut this argument, cite any authority for the proposition that she has Article III standing, or indeed even use the word "standing," let alone reference the traceability or redressability prongs which Ms. Barnes contests. *See generally* [Doc. 38]. Plaintiff's arguments under the heading "Director Barnes is Wrong to Deny Responsibility" do not engage with the causation or redressability prongs of standing. *See* [*id.* at 3–5]. And the handful of cases cited by Plaintiff do not involve standing. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 22–23 (1991) (scope of § 1983 liability).

      Defendant Barnes takes the position in reply that Plaintiff's lack of response to her standing argument means that K.A. has "confessed" the Barnes Motion to Dismiss. [Doc. 44 at 2]. Upon review, the Court respectfully agrees that K.A. has failed to carry her burden. Standing is Plaintiff's burden, *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016), and Plaintiff has not attempted to meet her burden, *see, e.g.*, *Brunson v. Adams*, No. 2:21-cv-00175-RJS-CMR, 2023 WL 2938533, at *3 (D. Utah Jan. 6, 2023) (recommending dismissal of claims where nonmovant did not address standing argument), *report and recommendation adopted*, 2023 WL 2583315 (D. Utah Mar. 21, 2023). Accordingly, the Barnes Motion to Dismiss is **GRANTED** and Counts I–III are **DISMISSED without prejudice**[6] as against Defendant Barnes.

---

[6] A dismissal for lack of jurisdiction is without prejudice because the court "lack[s] jurisdiction to make a determination on the merits." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

## II. ACDHS Motion to Dismiss

### A. Ms. Dossey and the Board

The Court starts with ACDHS Defendants' contention that neither Ms. Dossey nor the Board belongs in this action. With respect to Ms. Dossey, a Department employee sued only in her official capacity, ACDHS Defendants argue that she is needlessly named because, "[w]here a party sues an entity and then sues employees of that entity in their official capacity, the official capacity claims are redundant and should be dismissed." [Doc. 10 at 9]. Plaintiff does not respond to this argument, and the Court notes that the only mentions of Ms. Dossey in either the Complaint or the Response are in the caption and "Parties" section of the former.[7] *See generally* [Doc. 21; Doc. 38]. "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). If "the entity is also named, there is no need for an official-capacity claim" against the individual. *Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1087 (D. Colo. 2010). Here, as ACDHS Defendants point out, Ms. Dossey allegedly works for the Department, which is named in every claim in the Complaint. *See* [Doc. 21 at 18–31]. All claims against the Department and Ms. Dossey in her official capacity are ultimately treated as claims against the State of Colorado. *See Dahn v. Adoption All.*, No. 13-cv-02504-RM-CBS, 2014 WL 12496539, at *3 (D. Colo. Aug. 28, 2014). The Court finds the authority cited by ACDHS Defendants, which strikes redundant official-capacity individual defendants under Rule 12(f), to be persuasive. *See, e.g.*, *Silverstein*, 704 F. Supp. 2d at

---

[7] Defendant Dossey also appears to be mentioned in the introductory paragraph to the Complaint within a list of Defendants, where her name is misspelled as "Michelle Dosey." *See* [Doc. 21 at 1].

1087 (striking official-capacity claims against individual defendants whose employer was named in the suit as "redundant, unnecessary, and potentially confusing pursuant to Federal Rule of Civil Procedure 12(f)").  The ACDHS Motion to Dismiss is **CONSTRUED** as a motion to strike Defendant Dossey under Rule 12(f).[8]  So construed, the ACDHS Motion is **GRANTED** and all claims against Defendant Dossey in her official capacity are **STRICKEN** from the Complaint as redundant.

Turning to the Board, ACDHS Defendants argue that, because the Department is an arm of the state, a challenge to its policies should not name the Board.  [Doc. 10 at 13–14]; *see also* [*id.* at 14 ("The policies of the ACDHS are state policies[,] not policies of the Board and, thus, the Board is not the correct entity and must be dismissed as a party.")].  For support, ACDHS Defendants cite a case in this District finding a board of county commissioners improperly named in connection with a suit against the county's department of human services.  *See Doe v. Woodard*, No. 15-cv-01165-KLM, 2016 WL 11658659, at *16 (D. Colo. Sept. 30, 2016).  Plaintiff does not address this argument in her brief, and the Court notes that, much like with Defendant Dossey, the only references to the Board in either the Complaint or the Response can be found in the Complaint's caption, introduction, and "Parties" section.  *See generally* [Doc. 21; Doc. 38].  Plaintiff has supplied no basis for connecting any injuries or deprivations she has suffered with the conduct of the Board in particular, nor has she responded to ACDHS Defendants' argument about the Board's inclusion.  The Court finds *Woodard* persuasive and respectfully concludes that the Board should be dismissed from this action because

---

[8] Under Rule 12(f), the Court may, either on its own or on motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Plaintiff has not alleged that its policies or procedures—as opposed to the Department's—are relevant to her claims.  *See Woodard*, 2016 WL 11658659, at *16 (dismissing board of county commissioners where plaintiffs had not "adequately alleged that [the board was] responsible for the policy which allegedly caused the violations of [p]laintiffs' constitutional rights").  The ACDHS Motion is **GRANTED** with respect to the Board.  Counts I–VI are **DISMISSED without prejudice** as against the Board.

### B. The Department

That leaves only Counts I–VI against the Department.  The Court evaluates the various pending jurisdictional challenges to these claims by reference to the forms of relief sought.  First, to the extent that Plaintiff seeks money damages, [Doc. 21 at 32], ACDHS Defendants argue that the Department has Eleventh Amendment immunity because "county departments of human services are arms of the state which are immune from liability for damages under Section 1983," [Doc. 10 at 6].  Plaintiff does not meaningfully respond to this assertion of Eleventh Amendment immunity in her Response; instead, under a heading about why the Eleventh Amendment does not shield Defendants from suit, she contests *qualified immunity*, a separate defense that is not at issue on either of the instant motions.  *See* [Doc. 38 at 12–15].  ACDHS Defendants refer the Court, *see* [Doc. 10 at 6–7], to state and federal authority in Colorado finding that county departments of human services are not persons subject to suit under § 1983.  *See, e.g.*, *Pierce v. Delta Cnty. Dep't of Soc. Servs.*, 119 F. Supp. 2d 1139, 1147–48 (D. Colo. 2000); *Wigger v. McKee*, 809 P.2d 999, 1004 (Colo. App. 1990).  The Court finds this uncontested authority persuasive.  Accordingly, the Court respectfully concludes that Plaintiff has failed to show

15

that any § 1983 damages claim against the Department survives ACDHS Defendants' unrebutted assertion of Eleventh Amendment immunity.

Next, to the extent that Plaintiff seeks an order "[r]evers[ing] the termination of Plaintiff's parental rights," or requiring "a new hearing wherein Plaintiff may appeal the termination of her parental rights," [Doc. 21 at 32], ACDHS Defendants argue that such relief is barred by the domestic-relations exception to federal jurisdiction, [Doc. 10 at 3–5].  The Court respectfully agrees.  The Tenth Circuit has explained that, under the domestic-relations exception, "a federal court cannot 'reopen, reissue, correct, or modify' an order in a domestic-relations case."  *Alfaro v. Cnty. of Arapahoe*, 766 F. App'x 657, 659 (10th Cir. 2019) (quoting *Leathers v. Leathers*, 856 F.3d 729, 756 (10th Cir. 2017)). As ACDHS Defendants argue, "[b]ecause Plaintiff asks this Court to 'reverse' or order a new termination hearing, Plaintiff seeks the resolution of actions typically reserved [to] state courts and, thus, this Court lacks jurisdiction."  [Doc. 10 at 4].  K.A. responds that "[t]he domestic relation exception was never intended to bar federal courts from reviewing state laws or the actions, policies, or practices of state or local governments for unconstitutionality, just because they may relate to domestic issues."  [Doc. 38 at 5].  But "[f]ederal courts do not have jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."  *Alfaro*, 766 F. App'x at 660–61 (quotation omitted).  The Court cannot exercise jurisdiction over Plaintiff's first and second claims for relief related to the termination of her parental rights by the Colorado state court.  *See* [Doc. 21 at 32].

16

Finally, turning to the contemplated declaratory relief, *see* [*id*.], ACDHS Defendants observe that the "declaratory relief sought by Plaintiff relates to constitutional challenges [to] various state dependency and neglect statutes, state court procedural rules, and the constitutionality of the federal Indian Child Welfare Act," and thus is "not directed against the ACDHS Defendants who were not responsible for promulgating or drafting those measures," [Doc. 10 at 6 n.3]. In her Response, Plaintiff's only reference to declaratory relief is her assertion that such relief may properly be sought against Defendant Barnes—who is not one of the ACDHS Defendants. [Doc. 38 at 4]. The Court takes this representation as a concession, in response to ACDHS Defendants' argument, that Plaintiff does not seek declaratory relief with respect to the Department, but only as to Defendant Barnes. As noted above, Plaintiff has not shown that she has standing to sue Defendant Barnes. And, in any case, with all other claims and requests for relief dismissed, the Court lacks jurisdiction over the contemplated declaratory relief. *See, e.g.*, *DeRito v. United States*, 445 F. Supp. 3d 1258, 1270 (D. Colo. 2020) (finding no jurisdiction over claims for declaratory relief once all other claims were dismissed). The ACDHS Motion to Dismiss is **GRANTED**.

### III.  Statute of Limitations

In the alternative, even if any of the issues discussed above did not defeat Plaintiff's Complaint, in whole or in part, the Court finds that Defendants would prevail on their statute of limitations argument. The Parties agree that a two-year statute of limitations applies here. *See* [Doc. 10 at 9; Doc. 37 at 12; Doc. 38 at 10]; *see also McDonald v. Citibank N.A.*, No. 21-1313, 2022 WL 16557957, at 1* n.2 (10th Cir. Nov. 1, 2022) ("Because there is no federal statute of limitations for § 1983 and § 1985 actions,

Colorado's two-year residual statute of limitations for personal-injury claims applies to those claims."). The Parties also agree that the only events described in the Complaint that occurred within the limitations period—the two years preceding June 20, 2023—are decisions denying review of K.A.'s state court cases by the Colorado Court of Appeals and the Colorado Supreme Court in mid-2021. *See* [Doc. 10 at 11; Doc. 38 at 10]. But Plaintiff is not suing the Colorado state courts. *Cf.* [Doc. 38 at 6 (Plaintiff arguing, in the *Rooker-Feldman* context, that "it is not the state court decision that Plaintiff challenges, but the law, policies, and practices that led to it")]. And Plaintiff fails to explain how the statute of limitations on Defendants' allegedly wrongful conduct at issue only began to run when these Colorado courts denied review of certain legal actions. K.A. references "the termination of her parental rights and her unconstitutional jailing" in her Response, [*id.* at 10], but appellate decisions in K.A.'s lawsuits over these events merely illustrate how they allegedly occurred more than two years before this action commenced on June 20, 2023, *see* [Doc. 21 at ¶¶ 70, 74].

K.A. argues that any limitations period that could bar her suit should be equitably tolled. *See* [Doc. 38 at 10–11]. Specifically, she contends that "Defendants purposely interfered with her ability to make claims throughout her extraordinary legal saga," such as by limiting her access to court records, and she suggests that "the global [COVID-19] pandemic affected Plaintiff's access to attorneys and legal research while jailed."[9] [*Id.*]. Defendants respond that Plaintiff had sufficient access to case records to make similar

---

[9] In the Response, Plaintiff also suggests that tolling is warranted based on Defendants' conduct because Defendants "continually threatened [K.A.'s] attorneys." [Doc. 38 at 11]. This argument does not cite to the Complaint and the Court discerns no basis for it in K.A.'s pleading. *See generally* [Doc. 21].

claims in state court well before the limitations period expired, notwithstanding the COVID-19 pandemic. [Doc. 43 at 8–9; Doc. 44 at 5]. To the extent the Court could equitably toll the applicable statute of limitations, the Court respectfully concludes that doing so would be unwarranted. As Defendants point out, Plaintiff does not explain why she could not litigate these issues sooner and, critically, she has already been litigating some of these issues in various state court cases. *See Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008) (equitable tolling requires "extraordinary circumstances"). Accordingly, Plaintiff's claims are all untimely and would be subject to dismissal under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)   The ACDHS Defendants' Motion to Dismiss [Doc. 10] is **GRANTED**;

(2)   All claims against Defendant Michelle Dossey are **STRICKEN**;

(3)   The Corrected Barnes' Motion to Dismiss [Doc. 37] is **GRANTED**;

(4)   The Complaint [Doc. 1] is **DISMISSED without prejudice**;

(5)   Plaintiff's Motion for Leave to File Amended Complaint [Doc. 45] is **DENIED without prejudice**;[10] and

---

[10] Although Plaintiff did not seek leave to amend in response to the Motions to Dismiss, *see generally* [Doc. 38], she did file a Motion for Leave to File Amended Complaint ("Motion to Amend") today. [Doc. 45]. Because Plaintiff does not have a right to amend under Rule 15(a) of the Federal Rules of Civil Procedure; the Motion to Amend is opposed; and based on the Court's initial review, it is not evident that the proposed amendments cure the deficiencies identified herein, this Court proceeds with this Memorandum Opinion and Order and **DENIES without prejudice** the Motion to Amend. If, after Plaintiff has an opportunity to review this Memorandum Opinion and Order, she continues to contend that amendment is proper, she must meet and confer with Defendants about any proposed amendments and may renew her request for leave to file an amended pleading no later than **February 2, 2024**. Any renewed request for leave must address and account for the Court's rulings reflected in this Memorandum Opinion

(6)  The Clerk of the Court is **DIRECTED to MAINTAIN** the redline version of the proposed First Amended Complaint and Jury Demand [Doc. 45-1] under Level 1 Restriction consistent with the Minute Order dated July 25, 2023 [Doc. 15].

DATED: January 19, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

and Order.  To the extent that Plaintiff does not seek leave to amend by that date, this Court will award Defendants their costs under Federal Rule of Civil Procedure 54 and Local Rule 54.1 and direct the Clerk of the Court to close this case.